**No. 22-2839**
**CAPITAL CASE**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

**ROBERT WHARTON, Petitioner,**

**v.**

**DONALD T. VAUGHN, Respondent.**

**Appeal of The Philadelphia District Attorney's Office, Paul George, and Nancy Winkelman**

---

On Appeal from the Order entered on September 12, 2022, in the United States District Court for Eastern District of Pennsylvania in Civil Action No. 2:01-cv-06049-MSG

---

# BRIEF OF AMICI CURIAE JAMES BECKER, DORIS BROGAN, STEPHEN BROWN, STEPHEN BURBANK, PATRICK EGAN, ROBERT FIEBACH, LAWRENCE FOX, JOHN GROGAN, ROBERT HEIM, DAVID HOFFMAN, SETH KREIMER, HOWARD LANGER, TIMOTHY LEWIS, JAMES MARTIN, ARTHUR NEWBOLD, ABE REICH, DAVID RICHMAN, ANDREW ROGOFF, LOUIS RULLI, STEPHEN SCHULHOFER, DAVID SONENSHEIN, MARC SONNENFELD, DENNIS SUPLEE, ADAM THURSCHWELL, AND RALPH WELLINGTON IN SUPPORT OF THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE, PAUL GEORGE, AND NANCY WINKELMAN

J. Gordon Cooney, Jr.
gordon.cooney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street,
Philadelphia, PA 19103-2921
Tel. 215.963.5000
Fax 215.963.5001

Raechel K. Kummer
raechel.kummer@morganlewis.com
Lindsey T. Levy
lindsey.levy@morganlewis.com
Colin S. Harris
colin.harris@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel. 202.739.3000
Fax 202.739.3001

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... ii

**STATEMENT OF INTEREST** .......... 1

**SUMMARY OF THE ARGUMENT** .......... 1

**ARGUMENT** .......... 3

A. The Plain Text of Rule 11 Does Not Support The Sanctions Order. .......... 3

1. Rule 11(b)(3) does not apply to the DAO's concession of a legal issue based on a review or a careful review .......... 5

2. The District Court misapplied Rule 11(b)(3)'s "evidentiary support" standard. .......... 8

B. The District Court's Imposition of Sanctions Hinders the Interests of Justice. .......... 11

**CONCLUSION** .......... 16

**ADDENDUM – LIST OF AMICI CURIAE** .......... 17

**CERTIFICATION OF COMPLIANCE** .......... 24

**CERTIFICATE OF BAR MEMBERSHIP** .......... 24

**CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS** .......... 24

**CERTIFICATE OF VIRUS SCAN** .......... 24

**CERTIFICATE OF SERVICE** .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp.*,
430 B.R. 142 (Bankr. D. Del. 2010) ............ 12

*Alston v. Speigel (In re Ames)*,
993 F.3d 27 (1st Cir. 2021) ............ 11

*Arthur Children's Trust v. Keim*,
994 F.2d 1390 (9th Cir. 1993) ............ 6

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
259 F.3d 135 (3d Cir. 2001) ............ 4

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
498 U.S. 533, 111 S. Ct. 922 (1991) ............ 3

*Commonwealth v. Wharton*,
607 A.2d 710 (Pa. 1992) ............ 10

*Commonwealth v. Wharton*,
665 A.2d 458 (Pa. 1995) ............ 10

*Commonwealth v. Wharton*,
811 A.2d 978 (Pa. 2002) ............ 10

*Commonwealth v. Wharton*,
961 A.2d 107 (Pa. 2008) ............ 10

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
930 F.2d 277 (3d Cir. 1991) ............ 11

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) ............ 11

*Hartman v. Hallmark Cards, Inc.*,
833 F.2d 117 (8th Cir. 1987) ............ 11

*Hunter v. Earthgrains Co. Bakery*,
281 F.3d 144 (4th Cir. 2002) .......................................................................12

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
726 F.3d 403 (3d Cir. 2013), *as amended* (July 22, 2013).................................4

*Obert v. Republic W. Ins. Co.*,
398 F.3d 138 (1st Cir. 2005)......................................................................6, 7, 15

*Pavelic & LeFlore v. Marvel Entertainment Group*,
493 U.S. 120, 110 S.Ct. 456 (1989).....................................................................3

*Stone v. Wolff Properties LLC*,
135 F. App'x 56 (9th Cir. 2005) ...................................................................5, 11

*Strickland v. Washington*,
466 U.S. 668 (1984).........................................................................................6, 8

*U.S. v. Snyder*,
136 F.3d 65 (1st Cir. 1998)................................................................................14

*Wharton v. Vaughn*,
722 F. App'x 268 (3d Cir. 2018) .......................................................................10

*Young v. U.S.*,
315 U.S. 257 (1942)...........................................................................................14

**Statutes and Rules**

Federal Rule of Civil Procedure 11 ...................................................................*passim*

**Other Authorities**

American Judicature Society, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11*
(S. Burbank ed., 1989) .......................................................................................14

BLACK'S LAW DICTIONARY (11th ed. 2019)...............................................5, 7

Gregory P. Joseph, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE.........................................................................................................7, 9

*Merriam-Webster.com*, 2023 https://www.merriam-webster.com/dictionary/fact..........................................................................5

## STATEMENT OF INTEREST[1]

Amici curiae are current or former practicing lawyers, law professors, and legal scholars whose scholarship, teaching, and professional activities focus on or inherently require expertise in civil procedure, legal ethics, and professional responsibility. Amici curiae respectfully submit this brief to address the district court's unwarranted imposition of sanctions under Federal Rule of Civil Procedure 11(b)(3) following the District Attorney's Office's Notice of Concession on Wharton's *Strickland* claim and the likely implications of such an unprecedented imposition of sanctions under Rule 11. The addendum to this brief includes a complete list of amici that have joined this brief.

## SUMMARY OF THE ARGUMENT

The district court's imposition of sanctions represents a dangerous and unwarranted expansion of Rule 11. The district court imposed Rule 11 sanctions where the attorneys had not made "factual contentions" that were false or lacked "evidentiary support." Instead, the district court erroneously held that attorneys in the District Attorney's Office ("DAO") violated Rule 11(b)(3) by filing a Notice of Concession of *habeas corpus* relief and stating that the DAO had "reviewed" or

---

[1] All parties consented to this amicus brief. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made any monetary contribution intended to fund the preparation or submission of this brief.

"carefully reviewed the facts and law…." The district court took issue with those assertions because the attorneys were unaware of a decades-old fact that the court viewed as relevant to mitigation/aggravation—a fact that the prosecutors at defendant's retrial did not even seek to use to support aggravation.

The DAO unquestionably conducted a "review," and that assertion was not false. The *habeas* concession and attorney statements about "carefully review[ing]" the case were not "factual contentions" within the meaning of Rule 11. Moreover, a court cannot sanction an attorney under Rule 11 for saying he or she conducted a careful or reasonable review because the attorney did not discover or learn of a fact that the court believes to have been relevant. Just because attorneys at the DAO did not learn of a particular fact in their investigation, it does not follow that there was no "factual support" for their asserting that a careful investigation had been conducted.

The district court's order significantly expands Rule 11 responsibility well beyond the text of the Rule. If upheld, it also would encourage certain private litigants to bring new and distracting Rule 11 motions if they determine that opposing counsel did not learn of a particular fact or facts as part of their required investigation behind a particular pleading or motion.

The danger of unwarranted sanctions is particularly acute when they are imposed, *sua sponte*, by the Court, rather than through the safe-harbor practice

litigants must follow when seeking Rule 11 sanctions. In the latter circumstances, counsel has an opportunity to clarify or limit any statement identified by opposing counsel, but the attorneys here were not afforded that opportunity prior to the imposition of Rule 11 sanctions.

Finally, the imposition of sanctions here threatens to chill prosecutors taking on the important and sometimes unpopular work of reviewing past convictions to determine whether or not a citizen's due process rights have been violated. It is one thing for a court to disagree with a prosecutor or litigant on the merits, it is quite another to adopt an expansive and non-textual view of Rule 11 to punish prosecutors or other lawyers for their advocacy.

## ARGUMENT

The district court's sanctions order is not supported by the plain text of Rule 11, and the rationale behind the imposition of sanctions here would significantly expand Rule 11 practice and sanctions beyond the intended scope of the Rule. Amici respectfully submit that this Court should reverse.

### A. The Plain Text of Rule 11 Does Not Support The Sanctions Order.

The proper analysis of Rule 11 begins with a careful examination of the text. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540–41, 111 S. Ct. 922, 928 (1991) ("As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."); *Pavelic & LeFlore v. Marvel Entm't*

*Grp.*, 493 U.S. 120, 123, 110 S.Ct. 456, 458 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, '[w]hen we find the terms . . . unambiguous, judicial inquiry is complete.'") (citations omitted); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 259 F.3d 135, 142 n.7 (3d Cir. 2001) ("The Supreme Court and this Court have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning."); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 408 (3d Cir. 2013), *as amended* (July 22, 2013) ("[W]e begin, as we must, with the text of the rule."). The text of Rule 11 does not support sanctions here.

In relevant part, Rule 11(b)(3) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the ***factual contentions*** have ***evidentiary support***.

Fed. R. Civ. P. 11(b)(3) (emphasis added).

In unambiguous terms, the Rule provides that any imposition of sanctions pursuant to section (b)(3) requires (1) a "factual contention" that (2) lacks "evidentiary support." Neither criterion is met here.

1. <u>Rule 11(b)(3) does not apply to the DAO's concession of a legal issue based on a review or a careful review.</u>

The district court erred as a matter of law in concluding that a lawyer's concession of a legal issue following a "review" or "carefu[l] revie[w]" of the matter can be sanctionable under Rule 11(b)(3) simply because that lawyer did not learn of a fact the court later found to have been important. To be sure, a lawyer can be sanctioned for asserting a false ***fact***, e.g., stating that a traffic light was green when in fact it was red—but even then only where there was no evidentiary support for saying it was green. A lawyer's ***concession of a legal issue*** based on a statement about a "***review***" or "***carefu[l] revie[w]***" of the facts is not within the purview of Rule 11(b)(3).

*i. <u>Rule 11(b)(3) only applies to factual contentions.</u>*

Rule 11(b)(3) applies only to "factual contentions." A factual contention requires a statement of ***fact***—information presented as having objective reality or truth. *See* Fact, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Something that actually exists; an aspect of reality . . . as distinguished from its legal effect, consequence, or interpretation"); *see also* Fact, *Merriam-Webster.com*, 2023 https://www.merriam-webster.com/dictionary/fact.

A factual contention must be capable of being proven false. *See Stone v. Wolff Props. LLC*, 135 F. App'x 56, 58 (9th Cir. 2005) (noting that while attorney's Rule 11 certification may have been unreasonable "it simply is not true that his statement

was false or, taking his statement as a factual contention, that it did not have, in the words of Rule 11(b)(3), 'evidentiary support'"). A statement that is "more fairly described as an unsound piece of lawyer advocacy rather than a lie about a fact" or that is "simply tendentious characterization" does not warrant sanctions under Rule 11. *Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 144 (1st Cir. 2005); *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1399 (9th Cir. 1993) (statements that are "argumentative but not false" not sanctionable).

*ii. The DAO's legal concession based on a "careful review" is not a factual contention.*

The district court imposed sanctions based on the attorneys' representations as part of the DAO's *habeas* corpus concession that it conducted a review or a careful review of the case. On February 6, 2019, the DAO filed its Notice of Concession of Penalty Phase Relief (ECF 155) ("Notice"), which stated in part:

> ***Following review of this case*** by the [CCRC] . . . respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does not contest the grant of a conditional writ of habeas corpus with respect to petitioner's death sentences.

Notice at ¶ 9 (emphasis added). In subsequent briefing requested by the Court, the DAO stated that it had "***carefully reviewed*** the facts and law and determined that Wharton's ineffectiveness claim fulfills the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)." ECF 162, at 3 (emphasis added).

The concession itself is not subject to Rule 11 sanctions under Rule 11(b)(3). A concession is a "voluntary yielding" to a legal issue—not a factual contention. Concession, BLACK'S LAW DICTIONARY (11th ed. 2019). And there is no question that the DAO conducted a "review" of the case. Amici do not dispute that the assertion that the DAO conducted "a review" could be viewed as factual. However, the simple statement that the DAO conducted "a review" cannot be the basis for the district court's imposition of sanctions in this case because it cannot be viewed as false. The DAO unquestionably did, in fact, conduct a review. That assertion is made no less true because the review that was conducted did not include one fact that the court later regarded as important.

The core of the court's Rule 11 scrutiny of the attorneys' actual statements centered on the representation that the DAO had "carefully reviewed" the case. But their characterization of the review as "careful" is not a statement amenable to sanctions. *See* Gregory P. Joseph, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 9 (citing *Obert*, 398 F.3d at 143). At best, it is a well-founded statement of a legal conclusion, or, at worst, it is a "piece of lawyer advocacy," with which the district court happened to disagree. *Obert*, 398 F.3d at 144. It was not "a lie about a fact." *See id.*

Rather than focus on the text of Rule 11 and the attorneys' actual statements, the district court concluded that the DAO's statement that its careful review found

merit to Wharton's *Strickland* claim "contained an ***implied representation***, subject to Rule 11(b)(3), that the [DAO] was not aware of any significant, contrary facts that would lead any reasonable judge to deny the requested relief." ECF 314 at 15 (emphasis added). But the attorneys made no such statement. The district court significantly expanded Rule 11 by transforming the attorney's actual statements into "implied representation[s]" that the court then found violated Rule 11.

The DAO told the district court that "a court may, but is not bound, to accept [the DAO's] concession," ECF 162 at 1, 5, and "[i]f the record is insufficient to rule on the remaining [ineffectiveness] claim, the Court can conduct an evidentiary hearing," *id.* at 5. The DAO acknowledged that its concession, based on the DAO's assessment of the facts and circumstances, was a statement with which the court could disagree and that the court might wish to conduct its own review. The DAO expressed its willingness for the district court to do just that.

2. The District Court misapplied Rule 11(b)(3)'s "evidentiary support" standard.

The district court also improperly read into Rule 11(b)(3) a standard that is not supported by the text. Under Rule 11(b)(3), an attorney presenting to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" his or her factual contentions

"have evidentiary support." Fed. R. Civ. P. 11(b)(3). A position with "evidentiary support" is not necessarily a prevailing one. Joseph, SANCTIONS § 9.

The standard does not require attorneys to assert facts on which there can be no basis for disagreement, nor is it one of whether different facts or evidence might support a different conclusion. The standard asks a simple question of whether evidence exists that supports the contention made.

Rather than address whether the DAO's statements had evidentiary support, the district court instead focused entirely upon one piece of evidence it viewed as undercutting the DAO's stated position. The district court concluded that "not identifying Wharton's escape cannot, under any circumstances, constitute a 'reasonable inquiry.'" ECF 314 at 11–12. In other words, the district court found that the DAO violated Rule 11, regardless of what other steps the DAO may have taken to review the case and to be thorough in that review, because its investigation and review of the facts did not identify one particular fact that the court later found to be important. *See id.* That approach is inconsistent with the "evidentiary support" standard of Rule 11. An attorney can conduct what he or she believes is a thorough review and not learn of a potentially important fact. That does not mean he or she violated Rule 11.

Moreover, lawyers for the DAO did not make any representation that any particular fact or piece of evidence concerning mitigation supported or did not

support their concession. And, in any event, the one fact the district court found critical (*i.e.*, Wharton's escape attempt from county prison) was not even used by the trial prosecutors to rebut Wharton's good conduct evidence. No court reviewing the case over the past three decades had referenced the escape attempt either.[2]

That the attorneys representing the DAO did not know of the escape does not mean that their statements about a review or a careful review lacked evidentiary support or that they did not meet their obligation of conducting a reasonable investigation before signing a pleading under Rule 11. The district court's interpretation of Rule 11 would (a) graft onto Rule 11 an obligation to investigate and know every potentially relevant fact as part of counsel's duty of investigation, and (b) transform the test for the accuracy of statements from whether there is "evidentiary support" to one requiring "no contrary evidence." Rule 11 does not and should not contain any such requirements. The district court's imposition of sanctions is contrary to the plain text of Rule 11(b)(3), would considerably expand Rule 11, and should be reversed.

---

[2] *See, e.g.*, *Commonwealth v. Wharton*, 607 A.2d 710 (Pa. 1992); *Commonwealth v. Wharton*, 665 A.2d 458 (Pa. 1995); *Commonwealth v. Wharton*, 811 A.2d 978 (Pa. 2002); *Commonwealth v. Wharton*, 961 A.2d 107 (Pa. 2008); *Wharton v. Vaughn*, 722 F. App'x 268 (3d Cir. 2018).

**B. The District Court's Imposition of Sanctions Hinders the Interests of Justice.**

The district court's errant expansion of Rule 11 beyond its careful text represents a dangerous and unwarranted expansion of Rule 11. It is one thing to disagree with a party; it is quite another to weaponize Rule 11 to punish lawyers who take legal positions with which the Court disagrees. While Rule 11 sanctions may be appropriate for statements that are "patently unmeritorious or frivolous," *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991), Rule 11 plainly "does not authorize sanctions for all conduct of which a court might disapprove." *Stone*, 135 F. App'x 56, 59 (9th Cir. 2005); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482–483 (3d Cir. 1987) ("Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling. Substantially more is required"); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 124 (8th Cir. 1987) ("Despite the fact that Hartman may have had a weak case and did not ultimately prevail on the merits, … [R]ule 11 was not violated."); *Alston v. Speigel (In re Ames)*, 993 F.3d 27, 35 (1st Cir. 2021) ("[T]he mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions.") (citation, brackets and internal quotation marks omitted).

The Advisory Committee Notes from the 1993 Amendment regarding *sua sponte* sanctions note that "[s]ince show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe

harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative." Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment. Given that the usual "safe harbor" protecting a lawyer from sanctions sought by opposing counsel does not apply to court-initiated Rule 11 proceedings, a court's power to issue a sanction, *sua sponte*, under Rule 11 must be strictly circumscribed. *See*, *e.g.*, *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) ("Importantly, a *sua sponte* show cause order deprives a lawyer against whom it is directed of the mandatory twenty-one day 'safe harbor' provision . . . In such circumstances, a court is obliged to use extra care in imposing sanctions on offending lawyers."); *accord In re 15375 Mem'l Corp.*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) ("Like courts' *sua sponte* sanctions under FRCP 11, requests [for Bankruptcy] Rule 9011 sanctions for filing a petition require heightened scrutiny. In *sua sponte* circumstances . . . there is no 'safe harbor' in the rule allowing lawyers to correct or withdraw their challenged filings. Courts will therefore impose *sua sponte* sanctions only in situations that are akin to contempt of court.") (internal citations and quotations omitted).

The fear of unpredictable sanctions for advancing an argument with which a court may later disagree would create a chilling effect on advocacy. If the district court's approach to Rule 11 were upheld, courtroom advocates of all stripes would be more hesitant in their advocacy for fear that judges might sanction them if they

disagreed with counsel's "implied representations" or concluded that counsel's factual investigation was insufficiently thorough merely because counsel was unaware of a particular fact that opposing counsel or the court later believed to be significant.

The district court's sanctions order has broad implications, given the frequency with which counsel may represent to the court that they have conducted a review. For example, class counsel who seek court approval of a settlement based on "a review" of the facts and authority would risk sanctions were the court to conclude that counsel was unaware of a single fact that counseled against the settlement. And every complaint and answer is signed with a Rule 11 certification based on a counsel's review of the facts supporting the allegations and defenses pled—prior to engaging with discovery where the evidence develops, and facts are found. If the order below is upheld, attorneys may be more reluctant to take on difficult cases or unpopular clients. As revised in 1993, Rule 11 was carefully crafted to avoid this consequence.[3]

---

[3] Among other goals, the 1993 amendments were "intended to remedy problems that [arose] in the interpretation and application of the 1983 revision of the rule" and to "place[] greater constraints on the imposition of sanctions." Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment.

The district court's imposition of sanctions is reminiscent of concerns that arose under the 1983 version of Rule 11. The Third Circuit Task Force on Rule 11 highlighted some of those concerns in its 1989 report—the disproportionate impact of Rule 11 sanctions on unpopular litigants being chief among them. American Judicature Society, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* (S. Burbank ed., 1989) at 65–72. The Task Force cautioned that while Rule 11 may be regarded as a case management tool, it is "one that should be used with the greatest possible caution" in cases involving the vindication of constitutional rights. *Id.* at 71.

The risk of chilling zealous advocacy is particularly acute in the context of *habeas* review and conviction-integrity work. Prosecutorial discretion is a bedrock principle of our justice system, including the ability of prosecutors to concede prior errors in the interest of justice. *See Young v. U.S.*, 315 U.S. 257, 258 (1942) ("The public trust reposed in [prosecutors] requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent."); *U.S. v. Snyder*, 136 F.3d 65, 70 (1st Cir. 1998) ("[I]t is a 'bedrock principle of our system of criminal justice' that a federal judge may not interfere with the government's prosecutorial decisions solely to vindicate his subjective view of the wisdom of a given enforcement strategy.") (internal citation omitted). Prosecutors

should be encouraged to exercise their best judgment towards a just result, not discouraged from exercising their discretion by an expanded sanctions risk.

Upholding the district court's sanctions order would send an ominous signal to prosecutors to think twice about their careers before conducting and advancing conviction-integrity reviews or making concessions of legal issues in the context of *habeas* review. Prosecutors could decide to leave in place questionable or downright defective convictions for fear of opening a Pandora's box of potential sanctions, putting their futures on the line should a court take issue with their professional judgment.

Expanding sanctions beyond the clear text of Rule 11 also would harm judicial efficiency. As the First Circuit stated in *Obert*: "Counsel every day file motions that are hopeless, just as they make hopeless objections in trials and hopeless arguments to the judge. Perhaps a court could sanction counsel under Rule 11 for many such hopeless motions, but doing so routinely would tie courts and counsel in knots." 398 F.3d at 146. The expanded and non-textual substantive standards for imposing sanctions in this case invite private counsel to bring new and expanded rounds of Rule 11 motions, including for example, if they determine signing counsel was unaware of a particular fact when they filed a paper, even if signing counsel conducted a reasonable investigation and the statement had some evidentiary

support. Such an expansion of Rule 11 would lead to significant and unnecessary motions practice, exacerbating expense and delay.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's opinion and order imposing sanctions.

Respectfully submitted,

/s/ *J. Gordon Cooney, Jr.*

J. Gordon Cooney, Jr.
gordon.cooney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street,
Philadelphia, PA 19103-2921
Tel. 215.963.5000
Fax 215.963.5001

Raechel K. Kummer
raechel.kummer@morganlewis.com
Lindsey T. Levy
lindsey.levy@morganlewis.com
Colin S. Harris
colin.harris@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel. 202.739.3000
Fax 202.739.3001

*Attorneys for Amici Curiae*

## ADDENDUM – LIST OF AMICI CURIAE

The amici curiae include the following. They serve as amici in their individual capacities. Academic and professional affiliations are for identification purposes only.

James M. Becker is Of Counsel at the firm of Buchanan Ingersoll & Rooney, P.C. He was previously a shareholder there for 10 years, and a partner at the firm formerly known as Saul Ewing LLP for over 27 years. Prior to private practice, Mr. Becker worked in the United States Department of Justice for 8 years, including 6 in the United States Attorney's Office for the Eastern District of Pennsylvania, where he served as an Assistant United States Attorney and as Chief of the Major Crimes Section. For 6 years, Mr. Becker served as a Hearing Committee member for the Pennsylvania Disciplinary Board. He is a former Chair of the Federal Criminal Law Committee for the Eastern District of Pennsylvania and a former member of the Practitioner's Advisory Group to the United States Sentencing Commission.

Doris DelTosto Brogan is a Professor of Law and holds the Harold Reuschlein Leadership Chair at Villanova University Charles Widger School of Law. Her publications include: *Expungement, Defamation and False Light: Is What Happened Before What Really Happened or is There a Chance for a Second Act in America*; *Less Mischief, Not None: Respecting Federalism, Respecting States and Respecting Judges in Diversity Jurisdiction Cases*; *Attorney Client Privilege and Conflicts of Interest, Legal Ethics for Trial Lawyers*; *Lawyers' Responses to Client Perjury Under the New Pennsylvania Rules of Professional Conduct-What Judges Can Expect*; and *The Domestic Relations Exceptions to Federal Diversity Jurisdiction*. Professor Brogan also serves on the Board of Directors of the Pennsylvania Innocence Project, and as Chair Emeritus of the Board of Directors of Riverbend Environmental Educational Center.

Stephen D. Brown is a retired partner and formerly civil rights counsel at Dechert LLP. He has extensive experience handling criminal and civil trials as well as federal grand jury matters and has written, taught, and lectured extensively on corporate crisis management, prisoner civil rights, and deposition skills. The Philadelphia Bar Association has presented him with the Wachovia Fidelity Award for his extraordinary leadership and innovation as Co-Coordinator of the Prisoner Civil Rights Panel for the United States District Court in the Eastern District of Pennsylvania.

Stephen B. Burbank is the Emeritus David Berger Professor for the Administration of Justice at the University of Pennsylvania Carey School of Law. He is the author of definitive works on federal court rulemaking, inter jurisdictional preclusion, litigation sanctions, international civil litigation, litigation retrenchment, and judicial independence and accountability. He is the principal author of *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* (1989) and a principal author of *The Report of the National Commission on Judicial Discipline and Removal* (1993). From 2002 to 2021, he served as Special Master/System Arbitrator of the National Football League.

Patrick J. Egan is a partner and Associate General Counsel at Fox Rothschild LLP. He has been a trial lawyer for 35 years. He is a Fellow of the American College of Trial Lawyers, Adjunct Professor of Trial Advocacy at Temple University James Beasley School of Law and the University of Pennsylvania Carey School of Law, Former Chair of the White Collar Committee of The Eastern District of Pennsylvania Federal Bar Association, Advisory Board member of The Champion Magazine, and President of the Board of The Atlantic Center for Capital Representation.

Robert H. Fiebach is senior counsel at Cozen O'Connor. He clerked for Chief Judge John Biggs, Jr. of the Third Circuit and has practiced law since 1965—over 55 years. He is a past President of the Pennsylvania Bar Association, a past member of the Board of Governors of the American Bar Association, a past Chair of the ABA Standing Committee on Lawyers Professional Liability, a past chair and present member of the PBA Committee on Legal Malpractice, a member of the PBA Professional Ethics Committee and a Fellow of the American College of Trial Lawyers. He has represented lawyers in professional liability and ethics matters for over 50 years.

Lawrence J. Fox is a partner at the law firm of Schoeman Updike Kaufman & Gerber LLP in New York City. He is a senior scholar at the Yale Law School where he taught a lawyer ethics and professional responsibility course for a dozen years. Before that, he taught the same course at Cornell University, the University of Pennsylvania, and Harvard University.

John Grogan has been a civil litigator for 25 years. He is a partner at Langer Grogan & Diver, P.C. He practices in the areas of civil rights, consumer rights, and antitrust law. Mr. Grogan's practice often involves co-counseling relationships with non-profits and public interest organizations including the American Civil Liberties Union, HIAS-PA and the law clinics at the University of Pennsylvania and Villanova law schools. Prior to entering private practice, Mr. Grogan was the co-founder and

director of the Camden Center for Law and Social Justice, Inc., a non-profit law firm serving the needs of immigrants and the working poor. Mr. Grogan is an adjunct lecturer at the University of Pennsylvania Carey School of Law and is a member of the American Law Institute.

Robert C. Heim is a nationally known trial lawyer who has defended the media, airlines, pharmaceutical companies and other major corporations in cases of various kinds. He has been Chancellor of the Philadelphia Bar Association and President of the National Conference of Bar Presidents. He was appointed by former Chief Justice Rehnquist to serve on the Federal Civil Rules Committee and by the Supreme Court of Pennsylvania to chair its Continuing Legal Education Board. He also served on the Advisory Committee to the Court of Appeals for the Third Circuit and has taught appellate advocacy at the University of Pennsylvania Carey School of Law. He is an elected Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers and has been the recipient of numerous professional awards. He is the former Chair of the Board of Trustees of the Free Library of Philadelphia and continues to serve as a trustee. He is also on the boards of the Philadelphia Orchestra, the Community College of Philadelphia Foundation, and Pennsylvanians for Modern Court, which he chairs.

David Hoffman is a Professor of Law at the University of Pennsylvania Carey School of Law and was previously a Professor at Temple University's Beasley School of Law. He has taught contracts, civil procedure, and corporate law. Before joining the legal academy, he was a litigator in New York City and a law clerk on the Eastern District of Pennsylvania. He currently serves as an appointed Federal Special Master in that Court.

Seth F. Kreimer is the Kenneth W. Gemmill Professor of Law at the University of Pennsylvania Carey Law School. His work has shaped analysis of privacy, abortion regulation, assisted suicide, and same sex marriage. He has explored the implications of DNA testing in criminal justice, free speech on the Internet, the Freedom of Information Act, and the abuses of the "war on terror." He has represented plaintiffs in an array of constitutional litigation, including cases establishing the right of obstetrical patients to refuse non-consensual drug testing, securing the right of gay and lesbian parents to establish families by second parent adoption, overturning a lifetime employment disqualification of ex-offenders, and establishing the right of same sex couples to marriage equality in the state of Pennsylvania.

Howard Langer is the founding partner of the law firm Langer Grogan & Diver, P.C. He has specialized in practice before the federal courts over the last 45 years. He is

also a Professor of Law (Adjunct) at the University of Pennsylvania Carey School of Law where he teaches courses in federal litigation. In 2019, he received the William J. Brennan, Jr. award of the VIP Program of the Philadelphia Bar Association for his pro bono work in litigation on behalf of the underprivileged.

Timothy K. Lewis is a mediator, arbitrator, settlement counselor, and trial and appellate advisor at Schnader Harrison Segal & Lewis, where he also serves as co-chair of the firm's ADR Practice Group. Before entering private practice, Judge Lewis served on the U.S. Court of Appeals for the Third Circuit and the U.S. District Court for the Western District of Pennsylvania. Before his appointments to the federal bench, Judge Lewis served as an Assistant U.S. Attorney for the Western District of Pennsylvania and as an Assistant District Attorney in Allegheny County Pennsylvania. Judge Lewis has taught as an adjunct professor at the University of Pittsburgh School of Law; has served on the Dean's Advisory Committees at the University of Chicago School of Law and the Thomas R. Kline School of Law of Duquesne University; and has been a guest lecturer and commencement speaker at various law schools, including Georgetown, Duquesne, Temple, and Harvard.

James C. Martin is a partner at Reed Smith who has concentrated on appellate law for more than 35 years. He is a fellow and former president of the American Academy of Appellate Lawyers and is a member and former president of the California Academy of Appellate Lawyers. He is a founding member of the Third Circuit Bar Association and served as its second president. He served for three years on the California State Bar Committee on Appellate Courts and is the former vice-chair of the Federal Bar Association's Appellate Law and Practice Committee. He also is a co-editor and chapter co-author of PBI's Third Circuit Appellate Practice Guide.

Arthur Newbold is a retired partner and the former general counsel of Dechert LLP, where he served as a partner since 1974 and former chair of its trial department. He is a Fellow of the American College of Trial Lawyers.

Abraham C. Reich has been at the law firm of Fox Rothschild LLP for the past 48 years, as a partner for 41 years. He has been a member of the House of Delegates of the American Bar Association for over two decades. He has served as a former Co-Chair and is currently Chair Emeritus of the firm. Mr. Reich is a Fellow of the American College of Trial Lawyers. He serves on the Pennsylvania Bar Association's Committee on Ethics and Professional Responsibility as well as the Professional Guidance Committee of the Philadelphia Bar Association. He has taught ethics and advocacy (a professional responsibility course) at the University

of Pennsylvania Carey Law School for the past 16 years. Mr. Reich also is a former Chancellor of the Philadelphia Bar Association.

David Richman is a retired partner of Troutman Pepper Hamilton Sanders LLP and Fellow at the Pepper Center for Public Service. He has practiced as a litigator in the state and federal courts of Pennsylvania for 51 years, served as chief of the appeals division of the Office of the District Attorney of the City of Philadelphia, lectured on the professional responsibilities of prosecutors and civil litigators, co-founded The Pennsylvania Innocence Project, and was an adjunct professor of law at Temple University's Beasley School of Law where he taught advanced civil procedure and remedies. He received the Philadelphia Bar Association's 2015 PNC Achievement Award in recognition of significant accomplishments in improving the administration of justice in Pennsylvania and the Philadelphia Bar Association's Criminal Justice Section 2022 Thurgood Marshall Award for dedicated service to the cause of criminal justice and the betterment of Philadelphia.

Andrew Rogoff is senior counsel at Troutman Pepper Hamilton Sanders LLP and was a partner and associate in the predecessor firm of Pepper Hamilton LLP for 33 years. He has practiced as a litigator in state and federal courts of Pennsylvania and across the country for 43 years, including 5 years as an assistant district attorney in the Office of the District Attorney of Philadelphia. As an instructor for the National Institute for Trial Advocacy and as an adjunct professor at the University of Pennsylvania Carey School of Law and the Rutgers Law School, he taught professional responsibility in various trial advocacy courses.

Louis S. Rulli is a practice professor of law at the University of Pennsylvania Carey Law School where he has been a member of the faculty for 25 years and served as the law school's director of clinical programs for ten years. Prior to joining the Penn Law faculty, he was the executive director of Community Legal Services in Philadelphia. He is a founding member of the Pennsylvania Lawyer Trust Account Board (IOLTA) and a past chair of the Philadelphia Bar Association's Commission on Judicial Selection and Retention. He served on Pennsylvania's Ad Hoc Judicial Ethics Committee which drafted a revised judicial code of conduct for adoption by the Supreme Court of Pennsylvania. He currently serves in the Pennsylvania Bar Association's House of Delegates and is the former Access to Justice Advisor to the Philadelphia Bar Association.

Stephen Schulhofer has written more than fifty scholarly articles and six books, including the leading casebook in the field and highly regarded, widely cited work on a wide range of criminal justice topics. He clerked for two years for U.S. Supreme

Court Justice Hugo Black and then practiced law in France with Coudert Frères. He began his scholarly career researching and writing about punishment and sentencing and produced articles for the *Pennsylvania Law Review*, integrating legal issues with both empirical and philosophical literatures. Later, he focused on his own empirical study of bench trials in Philadelphia to prove that criminal justice could be efficiently and fairly administered without resort to plea bargaining, and published his analyses in the *Harvard Law Review*.

David A. Sonenshein is the Jack E. Feinberg Emeritus Professor of Litigation at Temple University School of Law, where he teaches courses in Civil Procedure, Criminal Procedure, Evidence, and Professional Responsibility. He has also taught at Boston University and DePaul University, and was the Lyle T. Alverson Professor of Law at George Washington University Law School. He was named the I. Herman Stern Professor of Law at Temple in 1992. He was formerly the Director of the American Institute for Law Training within the Office, the in-house training arm of the American Law Institute-American Bar Association. He also teaches Evidence to Federal Judges for the Federal Judicial Center.

Marc J. Sonnenfeld has been a member of the Pennsylvania Bar for more than 50 years. After clerking for the Honorable Joseph S. Lord, III, then Chief Judge of the United States District Court for the Eastern District of Pennsylvania, Mr. Sonnenfeld practiced with Morgan, Lewis & Bockius LLP for 47 years, 43 years as a partner. He is now Counsel to the firm and is engaged in a wide-variety of pro bono matters. Mr. Sonnenfeld is a Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers. He was recognized by the Philadelphia Bar Association with its 2010 Wells Fargo Fidelity Award for his "leadership, teamwork and commitment to the legal profession by helping to develop and maintain the Commerce Case Program of the Philadelphia Court of Common Pleas." He served as Chair of the Board of Governors of the Philadelphia Bar Association in 1987. He was recognized in 2017 by The Legal Intelligencer with its Lifetime Achievement Award.

Dennis R. Suplee is counsel at Schnader Harrison Segal & Lewis LLP. He served as Chairman of the Firm from 1992 to 1998 and has handled a wide range of civil litigation. He regularly handles mediations and arbitrations, and is on the AAA National Roster of Mediators and Arbitrators. He is a Fellow and Past President of the International Academy of Trial Lawyers, and a Fellow and Former Regent of The American College of Trial Lawyers. He has served as Chair of a number of committees of The College, including its Access to Justice Committee.

Adam Thurschwell is a practicing capital defense lawyer currently specializing in war crime and terrorism cases. Before switching to full-time practice, Thurschwell taught Criminal Law, Criminal Procedure and other classes for 14 years at several law schools, most recently at Georgetown University Law Center. While in teaching, Thurschwell also represented defendants and consulted in federal and state death penalty cases, including serving on the defense team for Terry Lynn Nichols in the Oklahoma City bombing case, *United States v. McVeigh and Nichols*. He is the author of numerous academic articles on Continental philosophy, capital punishment, law and literature, feminist philosophy and other topics. Thurschwell is a graduate of the University of Pennsylvania Carey School of Law and Yale College. He lives in Philadelphia.

Ralph G. Wellington is a partner in the Litigation Department at Schnader Harrison Segal & Lewis LLP. He served as Chairman of the Firm from 1998 to 2010 and has argued many appellate matters, including before the United States Supreme Court, several of the U.S. Circuit Courts of Appeals, and numerous state appellate courts. His practice has included significant matters throughout the United States in class actions; aviation and railroad law; business and corporate disputes; art law; and trusts and estates.

## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 29(a)(5) because it contains 3,656 words, excluding the parts of the brief exempted by FRAP 32(f). This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule of Appellate Procedure 46.1(e), J. Gordon Cooney, Jr., Raechel K. Kummer, Lindsey T. Levy, and Colin S. Harris are members in good standing of the bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

The text of the electronic Brief of Amicus Curiae filed with the Court via the court's electronic docketing system is identical to the text in the paper copies.

## CERTIFICATE OF VIRUS SCAN

A virus detection program, McAfee Antivirus Protection, version 16.0.32, was performed on the electronic version of the Brief of Amicus Curiae before filing, and no virus has been detected.

Dated January 30, 2023

*/s/ Raechel K. Kummer*
Raechel K. Kummer

## CERTIFICATE OF SERVICE

The undersigned certifies that all parties required to be served have been served. Further, the foregoing Brief of Amicus Curiae was filed with the Clerk and served this date on counsel of record for all parties through the Court's electronic filing system.

Dated: January 30, 2023

*/s/ Raechel K. Kummer*
Raechel K. Kummer