No. 22-2839
CAPITAL CASE

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

ROBERT WHARTON, Petitioner,

v.

DONALD T. VAUGHN, Respondent.

Appeal of The Philadelphia District Attorney's Office,
Paul George, and Nancy Winkelman

Appeal from the Order entered on September 12, 2022, in the
United States District Court for Eastern District of Pennsylvania
in Civil Action No. 2:01-cv-06049-MSG

REPLY BRIEF OF APPELLANTS
THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE,
PAUL GEORGE, AND NANCY WINKELMAN

KAIRYS, RUDOVSKY,
MESSING, FEINBERG & LIN
David Rudovsky (No. 15168)
drudovsky@krlawphila.com
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
John S. Summers (No. 41854)
jsummers@hangley.com
Matthew A. Hamermesh
(No. 82313)
mah@hangley.com
Andrew M. Erdlen (No. 320260)
aerdlen@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200

Dated: September 18, 2023

*Attorneys for Appellants*

# TABLE OF CONTENTS

I.   Introduction ............................................................................... 1

II.  Argument ................................................................................. 6

   A.   The Challenged Statements Were Truthful, Responsive to
        the District Court, and Did Not Violate Rule 11 .......................... 6

   B.   The Amicus Brief Misstates the Law of Rule 11 and the
        Duty of Candor .......................................................................15

   C.   The Statement About Communication with the Victims'
        Family Was Not Sanctionable ................................................. 23

   D.   The District Court Failed to Timely Refer the Matter
        Pursuant to Local Rule 83.6(V) .............................................. 26

III. Conclusion ........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Ford Motor Co.*,
  653 F.3d 299 (3d Cir. 2011) ..................................................... 27

*Arkansas Teacher Retirement System v. State Street
  Corporation*,
  25 F.4th 55 (1st Cir. 2022) ....................................................... 22

*Berger v. United States*,
  295 U.S. 78 (1935) ....................................................................19

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016) ............................................................. 25, 27

*Burger* v. *Kemp*,
  483 U.S. 776 (1987) ................................................................. 11

*Commonwealth v. Brown*,
  196 A.3d 130 (Pa. 2018)..................................................... 20, 21

*Commonwealth v. Thomas*,
  561 A.2d 699 (Pa. 1989).............................................................. 7

*Dillon v. BMO Harris Bank, N.A.*,
  2016 WL 5679190 (M.D.N.C. Sept. 30, 2016) ........................ 24

*Domain Protection L.L.C. v. Sea Wasp, L.L.C.*,
  23 F.4th 529 (5th Cir. 2022)..............................................19, 24

*Douglas v. Donovan*,
  704 F.2d 1276 (D.C. Cir. 1983) ............................................... 20

*Eagan by Keith v. Jackson*,
  855 F. Supp. 765 (E.D. Pa. 1994) ........................................... 22

*El v. City of Pittsburgh,*
    No. 2:15-CV-00834-NBF, 2017 WL 3219301
    (W.D. Pa. July 28, 2017),
    *clarified on denial of reconsideration,*
    No. 2:15-CV-00834-NBF, 2017 WL 4310233
    (W.D. Pa. Sept. 28, 2017)................................................................ 12, 13

*Ford Motor Co. v. Summit Motor Products, Inc.,*
    930 F.2d 277 (3d Cir. 1991) ........................................................15

*Garr v. U.S. Healthcare, Inc.,*
    22 F.3d 1274 (3d Cir. 1994) ...................................................... 3, 10

*Greenberg v. Lehocky,*
    No. 22-1733, 2023 WL 5539272 (3d Cir. Aug. 29, 2023) ......................17

*King v. Whitmer,*
    71 F.4th 511 (6th Cir. 2023) ........................................................16

*Kiobel v. Millson,*
    592 F.3d 78 (2d Cir. 2010).......................................................... 25

*LaSalle National Bank v. First Connecticut Holding Group, LLC,*
    287 F.3d 279 (3d Cir. 2002) .......................................................19

*Mary Ann Pensiero, Inc. v. Lingle,*
    847 F.2d 90 (3d Cir. 1988) ........................................................3, 12

*McCoy v. Court of Appeals of Wisconsin, District 1,*
    486 U.S. 429 (1988)................................................................ 18

*Moran v. Moran,*
    612 A.2d 1075 (Pa. Commw. Ct. 1992).......................................21

*Pa. Environmental Defense Foundation v. U.S. Department
    of the Navy,*
    1995 WL 56602 (E.D. Pa. Feb. 3, 1995)................................... 22

*Redland Soccer Club, Inc. v. Department of Army of U.S.,*
    55 F.3d 827 (3d Cir. 1995) .......................................................12

*Rompilla v. Beard,*
    545 U.S. 374 (2005)..............................................................11, 12

*In re Ronco, Inc.,*
   838 F.2d 212 (7th Cir. 1988).....................................................16

*Sibron v. New York,*
   392 U.S. 40 (1968)....................................................................20

*Six v. Generations Federal Credit Union,*
   891 F.3d 508 (4th Cir. 2018) ..............................................18, 19

*Strickland* v. *Washington,*
   466 U.S. 668 (1984).............................................8, 11, 12, 25

*In re Taylor,*
   655 F.3d 274 (3d Cir. 2011) .................................................. 24

*United States v. Block,*
   660 F.2d 1086 (former 5th Cir. Unit B Nov. 12, 1981) ......................... 20

*United States v. Gonzalez,*
   905 F.3d 165 (3d Cir. 2018) .................................................... 7

*United States v. Jimenez,*
   928 F.2d 356 (10th Cir. 1991) ................................................ 20

*United States v. Shaffer Equipment Company,*
   11 F.3d 450 (4th Cir. 1993) ...................................................19

*Vorchheimer v. Philadelphian Owners Association,*
   903 F.3d 100 (3d Cir. 2018) .................................................. 25

*Wharton v. Superintendent Graterford SCI, et al.,*
   No. 22-9001, Dkt. 34-1 (3d Cir. Dec. 6, 2022)........................... 8

*Wharton v. Superintendent Graterford SCI, et al.,*
   No. 22-9001, Dkt. 43 (3d Cir. Feb. 6, 2023)............................... 8

*Wharton v. Vaughn,*
   722 F. App'x 268 (3d Cir. 2018) ....................................... 6, 8, 9

*Wiggins* v. *Smith,*
   539 U.S. 510 (2003)................................................................11

## Constitutional Provisions, Statutes and Rules

28 U.S.C. § 1927 ................................................................................ 19

42 Pa. C.S. § 9711(d)(9) ................................................................... 7

E.D. Pa. L. Civ. R. 83.6 ................................................................. 26

E.D. Pa. L. Civ. R. 83.6(IV)(B) ................................................... 26

E.D. Pa. L. Civ. R. 83.6(V) ...................................................... 26, 27

Fed. R. Civ. P. 11 ...................................................................... *passim*

Fed. R. Civ. P. 11(b) ................................................................. 15, 17

Fed. R. Civ. P. 11(b)(3) .......................................................... 1, 6, 15

Fed. R. Civ. P. 11(c)(2) ................................................................. 16

Fed. R. Civ. P. 11, cmt. ................................................................. 13

Pa. R. Evid. 404(a) ....................................................................... 7

Pa. R. Prof'l. Conduct 3.3 ................................................. 22, 26, 27

Pa. R. Prof'l. Conduct 3.3(a)(1) ................................................... 17

Pa. R. Prof'l. Conduct 3.3(d) .................................................. 21, 22

U.S. Const. amend. VI ............................................................... 2, 12

## Other Authorities

American Bar Association, *Criminal Justice Standards for the
    Prosecution Function* s. 3-1.4(b) (4th ed. 2017). .................................. 20

Black's Law Dictionary (11th ed. 2019) ..................................... 27

Gregory P. Joseph, 1 Sanc. Fed. Law of Lit. Abuse § 11 (2022) .................. 23

Pa. Bar. Ass'n Comm. Leg. Eth. Prof. Resp., Op. 2005-10, 2005
    WL 1047078 (Mar. 17, 2005) (informal opinion) ..................................... 21

Phila. Bar Ass'n Eth. Op. No. 98-15 (July 2005), *available at*
https://philadelphiabar.org/?pg=EthicsOpinion98-15 ..........................21

## I.    INTRODUCTION

Appellants' Opening Brief demonstrates that the District Court erred in (1) failing to apply the requisite Rule 11 standard for imposing sanctions, (2) imposing an incorrect duty of candor for prosecutors, (3) relying on facts not supported by the record, and (4) sanctioning Appellants for statements that were undisputedly true and based on an inquiry reasonable in the circumstances.  Appellants' Br. at 30-50.  The brief further demonstrates that the District Court erred by not following Local Civil Rule 83.6.

The supporting brief of amici curiae of practicing lawyers, law professors, and legal scholars demonstrates that Rule 11 was not violated by the DAO's concession of a legal issue, the District Court misapplied the Rule 11(b)(3) standard, and the imposition of sanctions hinders the interests of justice.  Brief of Amici Curiae James Becker, et al., in support of Appellants at 5-16 (Dkt. 21) ("Becker Amici Br.").

This Court appointed Amicus to support affirmance, Dkt. 28 (Order), and briefs were also submitted by family members of the victims (Dkt. 47) and the Office of Attorney General (Dkt. 44).  This Reply focuses on the Appointed Amicus's Brief (Dkt. 36, "Amicus Brief"), addressing along the way points raised in the other briefs.

The Amicus Brief fails to come to terms with our core arguments. Most notably, the DAO's review was entirely consistent with the remand order of this Court, which set forth the governing principles of assessing a claim of ineffectiveness of counsel in a habeas proceeding. At that juncture, the DAO had the relevant information to evaluate the performance and prejudice prongs of Wharton's Sixth Amendment habeas claim. In the same way that a party after remand evaluates next steps after a re-review of the underlying trial transcript, the DAO had the full factual record of the sentencing court, including the aggravating and mitigating circumstances relevant to the prejudice issue. Here, moreover, that actual record evidence before the sentencing court had been developed by the prior DAO that vigorously sought the death penalty. Indisputably, the DAO carefully reviewed that evidence.

Appellants are not (and cannot be) faulted for their statement that they carefully reviewed *that* evidence. Instead, without legal basis, the District Court sanctioned Appellants because Appellants' review did not include a search for and consideration of *additional evidence that Appellants indisputably did not know about*. Rule 11 and professional responsibility law do not support such a duty—and as a matter of law Appellants cannot be sanctioned because the District Court faults

- 2 -

Appellants for not having searched for and considered evidence outside the sentencing court record.

As this Court has made clear, under Rule 11, "[t]he wisdom of hindsight should be avoided; the attorney's conduct must be judged by 'what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (quoting Fed. R. Civ. P. 11 advisory committee note); *see also Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994) (same). The application of this basic Rule 11 law—ignored by the District Court and Amicus—mandates reversal.

The Amicus Brief fails to support sanctions. To start, it does not acknowledge the governing standard – that sanctions are warranted only for "patently unmeritorious or frivolous" filings and *sua sponte* sanctions require something "akin to contempt." The Amicus Brief does not even try to link Appellants' statements to the governing Rule 11 standard; and doing so makes apparent that Appellants' statements are not sanctionable.

The Amicus Brief also repeatedly misapprehends the cases it cites. Among other things, it fails to acknowledge that the cases on which it relies are premised on attorney's *knowing* or *intentional* misstatements or omissions, something that the District Court did not (and could not)

conclude. There is no record support for concluding that Appellants knowingly or intentionally made any misstatement or omission, as they were not aware of the prison escape evidence that lies at the center of the District Court sanctions.

All of this is ample basis for reversing the District Court. But there is more. As noted in our Opening Brief, it is undisputed that the Notice of Concession (and proposed Order) was a form notice regularly used by prior District Attorneys and the current District Attorney in stating the intent to concede a claim in the District Court. Appellants' Br. at 11; A147, A180-A247. The Notices did not purport to provide reasons, pro or con, on the merits of claim, and they were accepted in every case in which they were filed. *See* Appellants' Br. at 11-12; A147 & n.2. The Amicus Brief does not rebut this.

Also, as our Opening Brief demonstrated, Appellants did not "refuse" to provide relevant information to the District Court. In response to the District Court's Memorandum of March 4, 2019, the District Attorney answered the two questions posed by the District Court, stating that the District Court "may, but is not bound to accept [the DAO's] concession," and that "if the record is insufficient to rule on the [ineffectiveness] claim, the Court can conduct an evidentiary hearing." A117. Without basis, the

District Court stated that Appellants "refused" to provide it relevant information. There is no record support for any "refusal." Appellants' Br. at 15-16. Rather than address this, the Amicus Brief parrots the District Court's misstatement that Appellants *refused* to provide relevant information. Amicus Br. at 41. Sanctions cannot be founded by these damning, but erroneous "facts".

To be clear, we accept the challenge by the District Court and Amici to hold Appellants to the highest possible ethical standards. As the District Court acknowledged, Nancy Winkelman and Paul George have outstanding reputations in the legal community. A296. We do not accept, however, inapplicable ethical standards and unfaithful citations to court decisions and the factual record.

There is nothing on this record that demonstrates that Appellants violated Rule 11 or any ethical standard. They have strong reputational interests that were injured in the proceedings below. The District Court sanctions order should be reversed.

## II.   ARGUMENT

### A.   The Challenged Statements Were Truthful, Responsive to the District Court, and Did Not Violate Rule 11

Appellants' opening Brief showed that their statements at issue were true, were based on a reasonable inquiry similar to previous concessions by the DAO and previous DA administrations and were not "factual contentions" amenable to sanctions under Rule 11(b)(3).  Appellants' Br. at 11-12, 36-50.  The Amicus Brief disputes these points but fails to provide a basis for sanctioning Appellants under Rule 11 or any governing ethical rule.

We start by setting the relevant legal and factual context on whether Appellants complied with the Rule 11 requirement to engage in a "reasonable" inquiry before submitting the concession and statement that they had made careful review.  First is this Court's remand order on the claim of ineffectiveness of counsel.  The District Court had denied a Certificate of Appealability on this claim, but this Court granted review based on the record, which included the testimony at Robert Wharton's death penalty hearing and the arguments of the parties on whether counsel was ineffective in not presenting mitigation evidence of good adjustment in prison.  *See Wharton v. Vaughn*, 722 F. App'x 268, 270, 282-84 (3d Cir. 2018).

The DAO had argued that counsel was not ineffective because the evidence of aggravating circumstances was overwhelming and there was no

reasonable probability that good adjustment evidence would have led to a different result. Yet the DAO had not presented evidence of the escape attempt at the death penalty hearing, even though it was admissible under Pennsylvania law as rebuttal to the good character testimony presented by Wharton. *See* Pa. R. Evid. 404(a); *accord United States v. Gonzalez,* 905 F.3d 165, 205 (3d Cir. 2018). The decision by the DAO not to introduce that evidence must have reflected lack of knowledge about the escape conviction (even though the evidence was far more recent than in 2019), as it would be a very strange strategic decision not to introduce the evidence. After all, that DAO zealously sought the death penalty.

Moreover, under Pennsylvania law, there was at least an arguable claim that the escape attempt was evidence of "a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa. C.S. § 9711(d)(9); *see Commonwealth v. Thomas,* 561 A.2d 699, 708-09 (Pa. 1989) (conviction for criminal trespass was a crime of use or threat to use violence to the person). Yet the DAO made no attempt to introduce the escape incident to support this aggravator. Nor did the DAO provide this evidence to this Court in response to Wharton's request for a Certificate of Appealability.

Second, this Court's ruling and remand order set forth the governing standards for assessing the ineffectiveness claim. Wharton had to show that his counsel's performance was deficient and that he suffered *Strickland* prejudice. On the first prong, Wharton's trial counsel testified at the 2021 hearing on the habeas petition that he was unaware of this statutory mitigator and that he would have introduced the evidence if he had known that it was admissible. Trial counsel also explained that given the egregious facts, his strategy was to persuade a single juror in order to get a life sentence. *See generally* Initial Brief for Appellant, *Wharton v. Superintendent Graterford SCI, et al.*, No. 22-9001, Dkt. 34-1, at 9-11, 27-35 (3d Cir. Dec. 6, 2022) (arguing that the risk of harm was far less than the possible benefit); Brief for Appellee, *Wharton v. Superintendent Graterford SCI, et al.*, No. 22-9001, Dkt. 43, at 16, 22-32 (3d Cir. Feb. 6, 2023).

On the prejudice issue, this Court instructed the District Court to determine whether the evidence of good adjustment established a reasonable probability of a different result. *Wharton v. Vaughn*, 722 F. App'x 268, 282-84 (3d Cir. 2018). Accordingly, on remand it made sense for the parties to review the record in the case, and primarily the death penalty hearing. It is standard practice after an appeal for the parties

review the trial court's record.  That is particularly so here, where Wharton's sentencing hearing was marked by vigorous efforts by the former District Attorney and Wharton's counsel.

Nothing in this Court's opinion required an independent, extra-record inquiry of prison-misconduct charges or prior criminal convictions, as that would have already been done by the prosecution to support the argument for the death penalty.  Nor did the opinion preclude concession of any legal issue.  The Court's reference to the double-edged sword of mitigating evidence and rebuttal evidence was not in reference to the escape attempt (which is not mentioned at all); rather, consistent with established practices, it called for the parties and the District Court to consider the mitigation and anti-mitigation evidence produced at the second penalty phase hearing.  *Wharton*, 722 F. App'x at 283.

The review by the DAO disclosed what reasonably appeared to be the relevant aggravating evidence, including rebuttal of Wharton's mitigation evidence of good character.  There was no indication of any relevant criminal acts of Wharton, and no mention of the escape attempt.  In these circumstances, reasonable counsel for the DAO could justifiably conclude that it should concede the issue.  Indeed, while the District Court rejected the ineffectiveness claim, it did so in large part because of the escape

attempt, which was not a part of Wharton's sentencing trial record. And with its grant of a COA, it is clear that without this evidence the result might well have been different.

In this context, it is apparent that because the prior prosecutors had not introduced evidence of the escape attempt, the current DAO could more than reasonably conclude that such a criminal record review was made and therefore another was not necessary. And since it is undisputed on this record that they had no knowledge of the escape attempt more than 30 years later, there was nothing of relevance to disclose to the Court. In other words, Appellants engaged in a "reasonable inquiry" under Rule 11 of the extensive record before them; and there was nothing unreasonable about their inquiry because they did not go further and fish for additional information.

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994), is fully consistent with this approach in its ruling that reasonableness "must consider all the material circumstances in evaluating the signer's conduct." *Id.* at 1278-79. Amicus is quite wrong in interpreting this language to mean that information not reasonably knowable fits within a duty to disclose under the rubric of all "circumstances supporting" (or for that matter not supporting) the concession. Amicus Br. at 38.

In *Rompilla v. Beard*, 545 U.S. 374 (2005), the U.S. Supreme Court addressed an analogous issue in a capital ineffective assistance case that focused on counsel's investigation of mitigation evidence.  Initial investigation by defense counsel (including interviews with the defendant and family members and psychiatric exams) had disclosed no evidence of childhood abuse.  Normally that investigation would have satisfied the *Strickland* standard.  *See Wiggins* v. *Smith,* 539 U.S. 510, 525 (2003) (further investigation excusable where counsel would likely be fruitless); *Strickland* v. *Washington*, 466 U.S. 668, 699 (1984) (character and psychological evidence would not likely be helpful); *Burger* v. *Kemp,* 483 U.S. 776, 794 (1987) (investigation reasonable once it was evident that witnesses had only harmful information).

However, counsel had failed to review court files *from which the prosecution had found prior convictions admissible as aggravating circumstance evidence.*  545 U.S. at 384-86.  In the same files was powerful mitigation evidence of severe childhood abuse that was easily located by post-conviction counsel.  *Id.* at 390-91.  The Supreme Court ruled that while there is no constitutional duty to engage in fishing expeditions for mitigation evidence when there is no indication that further investigation would be fruitful, where the prosecution has divulged evidence that clearly

marks a useful path to defense evidence, that step must be taken. *See id.* at 389.

The same is true here, as there is a strong correlation between the standards for "reasonableness" under Rule 11 and under the Sixth Amendment in capital case litigation. In neither setting is "perfection," as a matter of hindsight, required. *See Pensiero*, 847 F.2d at 94. Thus, if the prosecution case at the death penalty hearing had disclosed any evidence that the defense would need to investigate, on remand, both sides would reasonably engage in that further investigation. Here, there was absolutely no reason for the current DAO to believe that the former DAO had failed to find what the District Court found to be dispositive evidence of lack of prejudice on the *Strickland* claim.

The suggestion by the District Court and Amicus that Appellants' counsel prevented a full inquiry into the review made by the DAO committee by raising a deliberative process privilege is similarly without support. A47-49, A64-65; Amicus Br. at 41 n.6. Not only was the invocation of the privilege proper, but the District Court did not dispute its application. *See* A285, A314; *see also Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (deliberative process privilege protects confidential government deliberations); *El v. City of Pittsburgh*,

No. 2:15-CV-00834-NBF, 2017 WL 3219301, at *7 (W.D. Pa. July 28, 2017), *clarified on denial of reconsideration*, No. 2:15-CV-00834-NBF, 2017 WL 4310233 (W.D. Pa. Sept. 28, 2017) ("the reasoning behind why certain determinations were made" as to criminal charges was protected by deliberative process privilege and work product doctrine).  Such discussions are also protected as work product.  *El*, 2017 WL 3219301, at *7. Rule 11 "does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified."  Fed. R. Civ. P. 11, cmt. to 1983 Amendment.

In fact, Appellants' counsel allowed Mr. George and Ms. Winkelman to explain the review process and reasons for the concession, including a review of the death penalty hearing and their lack of knowledge of the escape attempt.  *See* A285-286, A297-A302, A309, A315, A318, A324-25, A335-341, A346-49, A352-353.  They also explained that the DAO reviewed the opinions and briefs from the case, A318, A338; reexamined the facts of the case and counsel's deficient performance, A302, A335-341, A347; and considered "the pros and cons of whether or not Mr. Wharton's issue had merit," A340-341.

The District Court never requested the DAO to provide any reasons, pro or con, on the concession issue.  The District Court's claim that it had requested a "fulsome" response on these facts, A9, is entirely inconsistent with the District Court's Order in response to the Notice of Concession, which asked only whether it had to accept the concession and whether it could hold a hearing on the ineffectiveness claim, A111.  The DAO properly responded that the District Court could hold a hearing and need not accept the concession, A113-118.[1]

Essentially, Amicus asserts that Appellants may be sanctioned for not having redone the investigation by the former District Attorney who zealously sought the death penalty.  Amicus Br. at 36, 40.  But the plain meaning of "review of this case" or "careful[] review[] of the facts and law" does not require a wide-ranging fishing expedition beyond the record in the

---

[1] Amicus doubles-down on the Court's misstatement, contending that the DAO had "affirmatively offer[ed] reasons for its concession" in its April 3, 2019, brief.  Amicus Br. at 38.  The DAO's brief was directed to the two narrow issues on which the District Court invited briefing: whether it was required to accept the concession and whether a hearing was necessary.  A113-118.  The District Court's March 4, 2019 Opinion, states that "I will order the parties to provide any facts and legal authority supporting their request that I grant of habeas relief on the current record."  A104.  This statement is not reflected in the accompanying Order, A111-12, and is clearly intended to address the scope of the evidentiary hearing on Wharton's claim.

case.  The record shows a reasonable review under the circumstances, and that is all that Rule 11 requires.  *See* Fed. R. Civ. P. 11(b).

Finally, we note Amicus's speculation, Br. at 43, that the former DAO did not use the evidence because no one had asserted that there had been a "careful review" before the concession.  That is *non sequitur*.  The former District Attorney vigorously sought and attempted to defend the imposition of the death penalty.  A4.  It did not use the evidence of the escape at the penalty hearing.  If that evidence were materially useful, the former prosecutors would have used it.  That they did not shows why it was reasonable that Appellants lacked knowledge of the escape and why Appellants reasonably relied on the record developed by the prior DAO in Wharton's previous criminal proceedings.

### B.    The Amicus Brief Misstates the Law of Rule 11 and the Duty of Candor

The Amicus Brief grossly misstates the Rule 11 standard.  As a general matter, Rule 11(b)(3) sanctions may be imposed "only in the 'exceptional circumstance' where a claim or motion is *patently unmeritorious or frivolous.*"  *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (emphasis added).  The evidentiary basis for a factual contention need not be substantial; even a "reasonable, albeit tenuous," basis satisfies the Rule.  *Id.* at 290.

Further, because *sua sponte* sanctions avoid the safe harbor provision of Rule 11(c)(2), the standard for a violation is even more demanding. It is reserved only for conduct "akin to a contempt" of court. Appellants' Br. at 31-32 & n.15 (citing cases).[2] The Amicus Brief ignores these standards, and it fails to demonstrate that Appellants' conduct meets these high Rule 11 requirements.

Instead, the Amicus Brief argues, erroneously, that Rule 11 imposes certain "substantive obligations" under an "implied duty of candor." Amicus Br. at 30.[3] It contends that these obligations require attorneys to (among other things) bring all "relevant facts," known **or unknown**, to a court's attention. *Id.* at 30-31. But this contention is not supported by Amicus's cases and ignores the heart of Rule 11: whether the party's

---

[2] Amicus argues that the imposition of sanctions is discretionary, and this Court's review is deferential. Amicus Br. at 28-29. But review of *any* sanctions order requires scrutiny. "Review [of a sanctions order] under the abuse of discretion standard does not mean no appellate review. Rule 11 sanctions have significant impact beyond the merits of the individual case." *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir. 1988) (including reputational harm to lawyers and chilling effect on creative advocacy); *see also* Becker Amici Br. at 11-16.

[3] *King v. Whitmer,* 71 F.4th 511 (6th Cir. 2023), ruled that sanctions are appropriate only "for factual assertions [attorneys] know—or after reasonable investigation should have known—are false or wholly unsupported." *Id.* at 521.

statement is the result of an "inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

To start, a finding that a lawyer breached an implied duty of candor requires that the lawyer made a *knowingly* false statement or *knowingly* failed to correct a misstatement.  *See* Pa. R. Prof'l. Conduct 3.3(a)(1); *accord Greenberg v. Lehocky*, No. 22-1733, 2023 WL 5539272, at *6 (3d Cir. Aug. 29, 2023) ("knowledge" within the meaning of Pa. R. Prof'l. Conduct 8.4 requires that lawyer "actually know[] his conduct [wa]s harassing or discriminatory," or be "practically certain that it will cause harassment or discrimination").  The District Court and Amicus cannot meet that burden because it is undisputed that no one involved in the DAO's review of Wharton's claim knew about the escape attempt.  *See* Appellants' Br. at 12-13 (citing, e.g., A324-25, A336, A346-47).  And, as we have argued, the DAO that vigorously sought the death penalty demonstrated no knowledge of the escape attempt, even though their efforts were far closer to the event than those of Appellants.[4]

_____

[4] Amicus defends the District Court's statement that "the DAO had improperly withheld information about Wharton's escape," Amicus Br. at 19, but both fail to show that Appellants knew of the escape (in fact, they

Next, Amicus incorrectly suggests the broader proposition that a lawyer may be sanctioned if the court considers itself "misled" by the lawyer's true statements. Amicus Br. at 27, 30-31. But no such duty exists, and the cases cited provide no support for this standard.

Amicus starts off by misstating *McCoy v. Court of Appeals of Wisconsin, District 1*, 486 U.S. 429 (1988), a case not even about Rule 11. Amicus says that *McCoy* stands for the proposition that "the duty of candor requires that attorneys not make statements that, while technically true, 'mislead the court.'" Amicus Br. at 30. Astonishingly, the Amicus Brief omits the word "deliberately" from its quote; the Supreme Court wrote that a lawyer should not make statements that "*deliberately* mislead the court." *See id.*; *see* 486 U.S. at 436 (emphasis supplied.)

From there, Amicus suggests that *Six v. Generations Federal Credit Union*, 891 F.3d 508 (4th Cir. 2018), supports the sanctions because it prohibits "ambiguous arguments that present an 'overall mosaic of half-truths and deception." Amicus Br. at 31. But *Six* also concerned (among

---

did not). Even more telling is the failure of Amicus to correct the District Court's clear factual error in asserting that it had asked the DAO for a "fulsome" statement of the reasons for the concession. There was *no* request, much less a fulsome one. Appellants' Br. at 15, 38 n.18.

other things) "failures to correct known misimpressions created by" the lawyers' own conduct."  891 F.3d at 511.  Likewise, *LaSalle National Bank v. First Connecticut Holding Group, LLC*, 287 F.3d 279 (3d Cir. 2002), cited for the principle that an attorney must conduct himself "with integrity and honesty when making representations regarding a matter in litigation," Amicus Br. at 30, was a construction not of Rule 11, but of Section 1927, which requires a showing of intentional or bad faith misconduct.

The Amicus Brief further misleads in citing *Koch v. Pechota*, 744 F. App'x 105 (3d Cir. 2018), *Domain Protection L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022), and *United States v. Shaffer Equipment Co.*, 11 F.3d 450 (4th Cir. 1993), for the far-too-broad proposition that "the duty of candor" requires "bringing relevant facts … to the Court's attention." Amicus Br. at 31.  Each of these decisions involves evidence of intentional wrongdoing or deceit.

On a related issue, Amicus Brief fails to address properly what it terms a prosecutor's "particularly important responsibility to abide by Rule 11 and uphold the duty of candor."  Amicus Br. at 31.  To be sure, prosecutors have special duties, including disclosing *Brady* material and advising the court of known facts that have a material impact on the issues in the case.  *See Berger v. United States*, 295 U.S. 78 (1935).  But those

duties are not violated when, as here, counsel, after reasonable investigation, knows nothing about the fact or piece of evidence.  The case cited by both the District Court and Amicus, *United States v. Block*, 660 F.2d 1086 (former 5th Cir. Unit B Nov. 12, 1981) highlights this: "So 'if an attorney for the Government *is aware* that the court lacks certain relevant factual information … [the attorney] has the duty to bring the correct state of affairs to the attention of the court."  *Id.* (emphasis added).[5]

Neither *Sibron v. New York*, 392 U.S. 40 (1968), nor *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018), are to the contrary.  *Sibron* holds that "[a] state has an interest in having its judicial judgments set aside only 'upon proper constitutional grounds' rather than the concession of an

---

[5] *United States v. Jimenez*, 928 F.2d 356 (10th Cir. 1991), holds that prosecutors have "'an ethical duty to disclose' relevant sentencing information."  True enough, but *Jimenez* makes that unremarkable observation in holding that a plea agreement, standing alone, does not prohibit a prosecutor from bringing relevant information to the court's attention at sentencing.  928 F.2d at 363.  The same is true with respect to *Douglas v. Donovan*, 704 F.2d 1276 (D.C. Cir. 1983), a case that concerned government lawyers' failure to apprise the court of a highly salient fact, of which they were obviously aware: that the case had settled.  704 F.2d at 1279.  Finally, the ABA standards, like other sources of ethical duties, and consistent with Rule 11, prohibit only *knowing* misstatements.  *See* American Bar Association, *Criminal Justice Standards for the Prosecution Function* s. 3-1.4(b) (4th ed. 2017).

'elected legal officer of one political subdivision within the State.'" And, as we have shown, *Brown* holds only that a District Attorney may not seek reversal of a final judgment without providing legal grounds for such a judicial declaration.[6]  *See* Appellants' Br. at 44-46.

Amicus again miss the mark in arguing that there is a heightened Rule 3.3(d) duty because the underlying habeas proceedings were "non-adversarial," Amicus Br. at 34-35.  Pennsylvania ethics opinions and case law hold that a proceeding is not "ex parte" if all parties have been given notice and an opportunity to be heard.  *See* Pa. Bar. Ass'n Comm. Leg. Eth. Prof. Resp., Op. 2005-10 2005 WL 1047078 (informal opinion); Phila. Bar Ass'n Eth. Op. No. 98-15; *Moran v. Moran*, 612 A.2d 1075, 1077

---

[6] Contrary to the Attorney General's assertion, Dkt. 44, at 2, Appellants do not seek "ethical 'wiggle room'" to concede habeas relief. Rather, Appellants fully accept the duties imposed under Rule 11; they do not accept Amici's and the District Court's misstated duties.

Additionally, although the Office of Attorney General purports not to weigh in on the merits, *id.* at 3, it also assumes, without record support, that Appellants were not "candid with the Judge" and "misled[]" him.  *Id.*

(Pa. Commw. Ct. 1992).  That is exactly what occurred here.  *See* Appellants' Br. at 33-34; A249-A256.[7]

Perhaps aware of these rulings and opinions, Amicus urges that Rule 3.3(d) goes beyond what Amicus terms "technical" *ex parte* proceedings.  *Id.* at 35.  That too is a head scratcher.  The rules of boxing allow a referee to cancel a fight by calling a Technical Knock Out.  *E.g.*, https://en.wikipedia.org/wiki/Knockout.  But a court cannot depart from the express text of a rule that makes no distinction between "technical" or other *ex parte* proceedings.[8]

---

[7] Professor Green provided an expert opinion that "a habeas proceeding in which the State decides not to contest the petition is [not] an ex parte proceeding within the meaning of the rule [3.3(d)]," A253 (citing NYC Bar Ass'n Comm. on Prof'l Ethics, Op. 2019-1 (2019)).  Like the District Court, Amicus quotes other writings by Professor Green to support arguments in favor of sanctions, Amicus Br. at 32, yet ignores Professor Green's report in this case.  Professor Green concluded that Appellants "did not violate any ethical duty or engage in sanctionable misconduct...."  A249.

[8] *Arkansas Teacher Retirement Sys v. State Street Corp.*, 25 F.4th 55 (1st Cir. 2022), involved the *Massachusetts* version of Rule of Professional Conduct 3.3, which *expressly* states that joint applications (there, a fee request) are *ex parte* in nature.  Moreover, even where there is an *ex parte* proceeding, sanctions are not appropriate unless the lawyer made a deliberate misstatement.  *See Pa. Envtl. Def. Found. v. U.S. Dep't of the Navy*, 1995 WL 56602 (E.D. Pa. Feb. 3, 1995); *Eagan by Keith v. Jackson*, 855 F. Supp. 765 (E.D. Pa. 1994).

Finally, sanctions should not be imposed where there is no clearly established duty under Rule 11.  As a leading commentator on sanctions has stated:

> Sanctions are therefore inappropriate where there is no clear, binding precedent on the issue and the position asserted is "fairly debatable," *Morristown Daily Record, Inc. v. Graphic Communications Union Local No. 8N*, 832 F.2d 31, 32 n.1 (3d Cir. 1987);...where the issue is decided in a controlling opinion only after the presenter has asserted a plausible position, *Blackwell v. Department of Offender*; or where the law is "not yet clearcut,"...

Gregory P. Joseph, 1 Sanc. Fed. Law of Lit. Abuse § 11 (2022) (certain citations omitted).  Here, there is no such precedent.[9]

## C.   The Statement About Communication with the Victims' Family Was Not Sanctionable

The Notice of Concession stated that there had been "communication with the victims' family."  Appellants and the drafter of the Notice did not state, and did not intend to convey, that the family agreed with the concession.  *See* A129-30; A362-63; A255-56 (Green Expert Report) ("There is no reason to believe that [Mr. Kaufman] or anyone else in the

---

[9] The District Court has, as a matter of the court's supervisory powers, imposed a rule for future "concessions" by the DAO in habeas matters that requires the DAO to provide relevant information regarding the concession. A69.  The DAO agreed with the Court's power to do so on a prospective basis.

Office anticipated the Court's reading of the phrase and its significance to the Court."). The statement was intended to convey only that the concession was discussed with the victims' family. A130. Amicus and Family Amici argue that while the statement may be "technically accurate," it was misleading. But the standard as to whether it is misleading is whether it was made to *deliberately* mislead, as Amici's cases establish; and there is no record evidence of deliberate deception. *See In re Taylor*, 655 F.3d 274 (3d Cir. 2011) (statements that were known to be false or a true statement where the "the reasonably foreseeable effect" of the representations reflected an intent to mislead the court); *Dillon v. BMO Harris Bank, N.A.*, 2016 WL 5679190, at *14 (M.D.N.C. Sept. 30, 2016) (a statement *deliberately* misleading the Court).[10]

---

[10] The Family Amici faults Appellants with this analogy to a teenager seeking use of a car: The child misleads in saying to Mom that he had spoken with his dad but in not reporting that the dad had said no. Family Br. at 20-21. But: (1) here, when Appellants reported that they has spoken with the family, the person that they had spoken with did not say "no" but said that he would check with other family members (A123); and (2) while the dad surely has say over whether the child can use the car, the victim's family view is not legally relevant to the ineffectiveness issue, as the District Court conceded. A10, n.3. *See Domain Protection*, 23 F.4th at 543 (vacating sanctions because relevance was not clear on the record).

Family Amici argue that a "half-truth" can be an actionable misrepresentation and that the context of the statement made it misleading. Dkt. 47 at 20. But this Court must focus on the plain meaning of the text. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) ("We begin with the text."). Here, the statement "communication with the victims' family," was made in the context of procedural facts, and is a typical notice-pleading statement. It refers to communication with the victims' family but does not in any manner suggest that "the Hart family *supported* the proposed concession." Nor did the District Court make any inquiry as to the family's position on the concession. Therefore, the District Court's interpretation, without further inquiry, was not compelled by the statement. *See Kiobel v. Millson*, 592 F.3d 78, 81 n.5 (2d Cir. 2010).

Finally, as the District Court acknowledged, it would have erred by deciding the *Strickland* claim on the basis of the family's views. *See* A10 n.3; *Bosse v. Oklahoma*, 580 U.S. 1 (2016) (per curiam).[11]

---

[11] The DAO expressed regret and apologized pursuant to the District Court's Order for its failure to have not more fully communicated with the family. But neither that fact, nor the victims' rights statute, renders the Notice false or misleading.

- 25 -

### D.    The District Court Failed to Timely Refer the Matter Pursuant to Local Rule 83.6(V)

Local Rule 83.6(V) required the District Court to transfer this matter to the Chief Judge as of May 11, 2022, when it issued an opinion in which it "preliminarily concluded" that the DAO breached its ethical duty of candor under Rule of Professional Conduct 3.3.  A33.

Amicus argues that a referral was not triggered because the District Court has inherent authority to sanction Appellants under Rule 11 and that the Rule only "covers situations where a judge believes disciplinary measures like disbarment or suspension could be warranted," Amicus Br. at 49.  Amicus is wrong.

First, the text of Local Rule 83.6 makes it applicable to *any* violation of the Rules of Professional Conduct.  *See* E.D. Pa. L. Civ. R. 83.6(IV)(B).[12] The Rule states that it covers "other disciplinary action as the circumstances may warrant."  And discipline is broadly defined to include "a sanction or penalty imposed after an official finding of misconduct" and

---

[12] The criticisms of the DAO in the May 11 Opinion are hardly "preliminary."  The District Court directly accused the DAO of "withholding" the escape attempt evidence, A37, although there was no factual basis to assume that the DAO knew or deliberately failed to take reasonable steps to know about the escape attempt.

commonly includes "disbarment, suspension, and reprimand." *See* DISCIPLINE (Definition No. 1), Black's Law Dictionary (11th ed. 2019); *Adams v. Ford Motor Co.*, 653 F.3d 299 (3d Cir. 2011).

Second, the May 11 Opinion made no mention of Rule 11 and was based on alleged ethical violations of the duty of candor under Rules of Professional Conduct. *Adams* is highly instructive. There, this Court ruled that "an order equivalent to a sanction" was within the D.V.I. local rule, which is virtually identical to E.D. Pa. Local Rule 83.6(V). Given the fact that the District Court's initial, May 11, 2022 ruling was based entirely on allegations of violations of the duty of candor under Rule 3.3, and that this case did not become a Rule 11 matter until the June 2022 hearing itself, *Adams* is fully applicable.[13] Thus, the District Court's obligation to refer the matter triggered when it believed it had Rule 3.3 concerns about Appellants.

---

[13] *Adams* stated that the D.V.I. Local Rule applies to orders "equivalent to a sanction." *Id.* a 307-08. Here, the findings in the May 11 Opinion were "equivalent to a sanction" as they "undermine[d] professional reputation[s] and standing in the community." *Id.* at 305-06.

## III.  CONCLUSION

For the foregoing reasons, and those set forth in their opening Brief, Appellants respectfully request that this Court reverse the District Court's order and vacate the District Court's opinion.

Respectfully submitted,

KAIRYS, RUDOVSKY,
MESSING, FEINBERG & LIN

By: */s/ David Rudovsky*
    David Rudovsky (No. 15168)
    drudovsky@krlawphila.com
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: */s/ John S. Summers*
    John S. Summers (No. 41854)
    jsummers@hangley.com
    Matthew A. Hamermesh (No. 82313)
    mah@hangley.com
    Andrew M. Erdlen (No. 320260)
    aerdlen@hangley.com
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200

*Counsel for Appellants Philadelphia
District Attorney's Office, Paul George,
and Nancy Winkelman*

Dated: September 18, 2023

# COMBINED CERTIFICATIONS

Pursuant to Fed. R. App. P. 32(g) and L.A.R. 32.1, I, the undersigned, hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).  Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,042 words.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.      This brief complies with the typeface and type style limitation of Fed. R. App. P. 32(a)(5) and (6). The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Georgia font.

3.      In addition, pursuant to Third Circuit Local Appellate Rule 31.1(c), the text of the brief filed with the Court via CM/ECF is identical to the text of the paper copies.

4.      The electronic version of the brief has been scanned for viruses by SentinelOne v 21.5.7.370 and Trend Micro ApexOne v14 (updated continuously) and is, according to that program, free of viruses.

5.    On September 18, 2023, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Dated: September 18, 2023                     */s/ John S. Summers*
                                              John S. Summers (PA 41854)