**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2839
_____

ROBERT WHARTON

v.

SUPERINTENDENT GRATERFORD SCI

PHILADELPHIA DISTRICT ATTORNEY'S OFFICE;
PAUL M. GEORGE; NANCY WINKELMAN,
                                    *Appellants*
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:01-cv-06049)
District Judge: Honorable Mitchell S. Goldberg
_____

Argued: October 11, 2023

Before: HARDIMAN, BIBAS, and PHIPPS, *Circuit Judges*

(Filed: March 8, 2024)
_____

David Rudovsky            **[ARGUED]**
KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN
718 Arch Street, Suite 501 South
Philadelphia, PA 19106

Andrew M. Erdlen
Matthew A. Hamermesh
John S. Summers
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103
    *Counsel for Appellants*

J. Gordon Cooney, Jr.
MORGAN LEWIS & BOCKIUS
2222 Market Street, 12th Floor
Philadelphia, PA 19103
    *Counsel for Amici James M. Becker, Doris Brogan, Stephen*
    *D. Brown, Stephen B. Burbank, Patrick J. Egan, H. Robert*
    *Fiebach, Lawrence J. Fox, John J. Grogan, Robert C.*
    *Heim, David Hoffman, Seth F. Kreimer, Howard Langer,*
    *Timothy K. Lewis, James C. Martin, Arthur E. Newbold,*
    *Abraham C. Reich, David Richman, Andrew R. Rogoff,*
    *Louis S. Rulli, Stephen Schulhofer, David A. Sonenshein,*
    *Marc J. Sonnenfeld, Dennis R. Suplee, Adam Thurschwell,*
    *and Ralph G. Wellington*

Christina R. Gay            **[ARGUED]**
Roman Martinez
Gregory B. in den Berken
LATHAM & WATKINS

2

555 11th Street NW, Suite 1000
Washington, DC 20004
 *Counsel for Court-Appointed Amicus Curiae*

Cari L. Mahler
PENNSYLVANIA OFFICE OF THE ATTORNEY GENERAL
1000 Madison Avenue, 3rd Floor
Norristown, PA 19403
 *Counsel for Amicus Pennsylvania Office*
 *of the Attorney General*

Stephen J. Hammer
Allyson N. Ho    **[ARGUED]**
Bradley G. Hubbard
GIBSON DUNN & CRUTCHER
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
 *Counsel for Amici Patrice Carr, David Hart,*
 *and Lisa Newman*

Stuart B. Lev    **[ARGUED]**
FEDERAL COMMUNITY DEFENDER OFFICE
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
 *Counsel for Appellee Robert Wharton*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Courts rely on lawyers' honesty; lawyers may not mislead them. But the Philadelphia District Attorney's Office did just that. It conceded that a court should vacate Robert Wharton's death sentence. Yet in doing so, it did not comply with this Court's instruction to investigate evidence cutting against Wharton's habeas claim. Nor did it disclose key facts about that claim. So the District Court found misconduct, directed the Office to be more forthcoming in the future, and ordered District Attorney Larry Krasner to apologize. Because those mild sanctions were well within the court's sound discretion, we will affirm.

## I. THE OFFICE CONCEDED HABEAS RELIEF WITHOUT ENOUGH INVESTIGATION

### A. The murder convictions and death sentences

Angry over a disputed debt, Robert Wharton terrorized the Hart family for months. He broke into their house repeatedly, ransacked it, and left a threatening note and a doll with a noose around its neck. *Commonwealth v. Wharton*, 607 A.2d 710, 713 (Pa. 1992). His campaign of terror peaked in early 1984: Wharton and a friend forced their way into the Harts' home at knifepoint. *Id.* at 714. They then bound, robbed, strangled, and drowned Bradley and Ferne Hart and turned off the heat, leaving the couple's seven-month-old, Lisa, to freeze. *Id.* Against

4

all odds, she survived. *Id.* A jury convicted Wharton of those crimes and sentenced him to death. *Id.* at 715.

At first, Wharton adjusted to prison poorly. While leaving the courtroom in an unrelated robbery case, he tried to escape. To stop him, an officer had to shoot him twice. The Office prosecuted him for that attempted escape, and he pleaded guilty.

Over the next six years, Wharton had a mixed prison record. Some of his behavior was good: he got education and job training, went to religious services, and voiced grievances appropriately. But he also racked up six prison misconducts, including two serious ones for having makeshift handcuff keys.

In 1992, after Wharton's first sentence was reversed for a jury-instruction error, a jury sentenced him to death again. State courts rejected his direct appeal and state habeas (technically, PCRA) petition. Then Wharton filed this federal habeas petition, which the District Court denied.

### B.  On federal habeas, the Office tried to concede

On appeal, this Court vacated on a single issue. *See Wharton v. Vaughn*, 722 F. App'x 268, 270 (3d Cir. 2018) (per curiam). Wharton claimed that his lawyer had not investigated prison records or put on evidence to show that he had adjusted well to prison. We ordered the District Court to hold an evidentiary hearing on whether counsel was ineffective for not doing that. *Id.* at 284. That evidence might have shown that Wharton "would not pose a danger if spared (but incarcerated)," suggesting that he could stay in prison safely. *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986); *see Wharton*, 722 F. App'x at

282. We specified that the hearing needed to cover not only "the mitigation evidence that went unmentioned," but also "the anti-mitigation evidence that the Commonwealth would have presented [in] rebut[tal]." *Wharton*, 722 F. App'x at 282–83 (internal quotation marks omitted). If Wharton had put on positive evidence, we noted, "the Commonwealth might have countered with other evidence." *Id.* at 283.

But less than a month later, before the District Court could hold that hearing, the Office filed a notice of concession. In that notice, the Office asserted that it had decided to concede relief "[f]ollowing review of this case by the Capital Case Review Committee…, *communication with the victims' family*, and notice to [Wharton's] counsel." JA 95 ¶9 (emphasis added). Yet it did not explain its about-face.

The District Court did not accept the concession. Instead, it asked the parties to brief whether it could grant relief without holding the evidentiary hearing that this Court had ordered. In response, the Office filed a brief asserting that it had "*carefully reviewed the facts and law* and determined that Wharton's ineffectiveness claim fulfills the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)." JA 115 (emphasis added).

Yet the Office did not reveal Wharton's escape attempt or prison misconducts. As Judge Goldberg observed, its brief said nothing about seeking facts beyond the record or investigating Wharton's prison adjustment. Rather, it seemed to have taken Wharton's evidence at face value.

Dissatisfied with the Office's explanation, the District Court appointed the Pennsylvania Attorney General as amicus

curiae to investigate Wharton's adjustment to prison. The Attorney General disclosed to the court what the Office had not—Wharton's escape attempt and the details of his prison misconducts. The Attorney General also provided evidence that the Office's communication with the victims' family had been minimal. Upon learning these previously undisclosed facts, the court scheduled an evidentiary hearing.

The hearing revealed that the Office's statements about its investigation into Wharton's prison adjustment were misleading. Paul George, who with Nancy Winkelman litigated this habeas case and supervised the Office's Law Division, admitted that the Office was aware of the escape attempt. Plus, the Office could have found the escape attempt simply by looking up Wharton's criminal record.

The hearing also revealed that the Office's statements about contacting the victims' family were misleading. Those statements implied "that the victims' family had agreed" with the Office's about-face. JA 38. Yet the Office had notified only Bradley's brother, but not the sole surviving victim (Lisa) or any other family members. And though it did contact Bradley's brother, it did not tell him clearly that it planned to concede the death penalty. Later, when the Attorney General explained the situation to the family members, most of them "were vehemently opposed to" the Office's concession. JA 40–41.

So the District Court "preliminarily conclude[d] that on [these] two critical issues in this case, it appears that the District Attorney was less than candid." JA 33. And it ordered the Office to explain its behavior at a show-cause hearing. There, George and Winkelman testified that neither they nor anyone

else on the Office's Capital Case Review Committee knew of the escape attempt when they decided to concede relief. When asked to reconcile this denial with his earlier admission that the Office *was* aware of the escape attempt, George said he had meant only that the Office "as an entity" had been aware of it three decades earlier. JA 49.

After the hearing, the District Court reprimanded the Office and supervisors George and Winkelman. It found that they had violated Rule 11(b)(3) because the Office had made "representations to th[e] Court that lacked evidentiary support and were not in any way formed after 'an inquiry reasonable under the circumstances.'" JA 45 (quoting Fed. R. Civ. P. 11(b)). For one, the Office would have discovered Wharton's escape attempt simply by reviewing his criminal record. So, if the Office had truly been unaware of the prior escape attempt, it had no reasonable basis to say it had reviewed the facts carefully. For another, the Office had not contacted most members of the victims' family. And, in its minimal contact with one family member, the Office had not explained the situation clearly. So its statement about communicating with the victims' family was false and not made after a reasonable inquiry. Both misstatements, the District Court held, violated the lawyers' duty of candor to the court.

The District Court imposed two mild sanctions. First, it ordered District Attorney Larry Krasner to apologize in writing to four of the victims' family members for misrepresenting the Office's communication with them. Second, it ordered the Office, when it seeks to concede federal habeas cases before Judge Goldberg in the future, to give "a full, balanced explanation" of the facts. JA 69. The court also referred the matter

to the district's chief judge for potential disciplinary proceedings under Local Rule 83.6(V)(A).

The lawyer who had signed the concession itself was not sanctioned. Unlike the others, he had apologized, candidly and contritely acknowledging that his statement could have been misleading. Plus, he had acted only at the direction of his supervisors: After Judge Goldberg ordered the lawyer to appear at the show-cause hearing, George and Winkelman argued that he "was not part of the decision-making process that led to the [c]oncession." Mot. to Excuse & to Continue Hr'g 1, *Wharton v. Vaughn*, No. 01-cv-06049 (E.D. Pa. May 24, 2022), ECF No. 287. Instead, they said they were "[t]he persons who have relevant knowledge and information" about the "concerns raised in the Court's … [o]pinion." *Id.*

The Office, George, and Winkelman now appeal, insisting that they did not lie. On the contrary, they claim that they did carefully review the facts in the record and did communicate with the victims' family. Because no party defends the sanctions, we appointed Gregory in den Berken and Christina Gay of Latham & Watkins as amici. Both Appellants' and Amici's briefing and oral advocacy have been excellent, and we thank Amici for their service to the Court.

## II. THE DISTRICT COURT PROPERLY IMPOSED MILD SANCTIONS

Appellants no longer seek to overturn either of the District Court's sanctions. Still, they have standing to appeal its sanctions order. Even without a formal reprimand, a court's finding of sanctionable conduct injures a lawyer's reputation enough to support standing. *See Adams v. Ford Motor Co.*, 653 F.3d

299, 305–06 (3d Cir. 2011). Appellants ask us to reverse the court's finding of misconduct and to thereby repair the injury to one of their "most important professional assets"—their reputation. *Id.* at 305 (internal quotation marks omitted). That is all they need for standing.

Appellants attack the District Court's sanctions order both procedurally and substantively. Both attacks fail.

## A. The District Court gave Appellants due process

Appellants claim that the District Court violated due process by breaking its own local rule. We review this due-process claim de novo. *Adams*, 653 F.3d at 304. When a district judge learns of actual or alleged misconduct that "would warrant discipline or other action against an attorney…, the judge shall refer the matter to the Chief Judge who shall issue an order to show cause." E.D. Pa. Loc. R. 83.6(V)(A). Under *Adams*, Appellants argue, the District Court had to transfer the case upon finding that they had violated their duty of candor. Rather than doing so, here the court imposed its own mild sanctions before referring the case to the chief judge for further proceedings.

But Appellants overread *Adams*. There, a magistrate judge had found misconduct and a violation of ethics rules without giving the lawyer notice of potential sanctions or a chance to respond. 653 F.3d at 303, 309. Here, though, the District Court gave Appellants the process that Adams's lawyer did not get: after "preliminar[il]y conclu[ding]" that the Office may have misled the court, it issued an order to show cause, giving the Office a chance to contest specific charges of misconduct. JA 42. Appellants had a month and a half to prepare for the

show-cause hearing. Only after that hearing did the court find Rule 11 violations.

Appellants thus had due process. They got fair notice and had a full and fair hearing. Counsel rightly conceded those points at argument. Judge Goldberg was admirably patient, giving them plenty of time and warnings. Plus, they suffered no prejudice. As their lawyer also conceded, there was no evidence that they would have introduced to defend themselves but could not.

## B. Rule 11 sanctions require only objectively unreasonable conduct, not bad faith

1. *Because we trust district courts, we review for abuse of discretion.* We review Rule 11 sanctions for abuse of discretion. *Scott v. Vantage Corp.*, 64 F.4th 462, 471 (3d Cir. 2023). That standard of review is rightly deferential. "Deference to a district court" is crucial under Rule 11 because "the inquiry is … heavily fact-dependent and requires familiarity with the issues and litigants." *Id.* So "a district court will always be 'better situated than the court of appeals' to apply the rule." *Id.* at 471–72 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990)).

We trust district judges' sound discretion. Because of this trust, we will not substitute our judgment for theirs. So we will not reverse Rule 11 sanctions unless they do not follow proper procedures, err on the law, clearly err in finding facts, or act "contrary to reason." *Scott*, 64 F.4th at 472 (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994), and citing *Cooter*, 496 U.S. at 405).

2. *Rule 11 requires only negligence, not bad faith.* Rule 11 is an important tool to deter litigation misconduct. *See Cooter*, 496 U.S. at 393. Under an earlier version of the rule, courts had to find *bad faith*. *See* Fed. R. Civ. P. 11, advisory comm. n. 1983 amend.; 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1331 (2018). But that was hard to prove. So judges were reluctant to impose sanctions, making Rule 11 ineffective as a deterrent. To fix that problem, the threshold for sanctions was lowered to require lawyers to make *reasonable* inquiries. *Id.* (both sources).

Now a court may impose sanctions "on any attorney, law firm, or party that violate[s] [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). And Rule 11(b) provides that when a lawyer "present[s] to the court a pleading, written motion, or other paper," she is "certif[ying] that to the best of [her] knowledge, information, and belief, formed after an *inquiry reasonable under the circumstances*: … (3) the factual contentions have evidentiary support." *Id.* r. 11(b) (emphasis added).

The lodestar of Rule 11 is thus reasonableness, not bad faith. Unlike sanctions under a court's inherent power, Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Not even *sua sponte* Rule 11 sanctions (those on the court's own initiative) require subjective bad faith. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995); *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 264 (5th Cir. 2007). So lawyers can be sanctioned for objectively unreasonable conduct—in a word, negligence. *Id.* (both sources).

This objective test has teeth. There is no "empty-head pure-heart justification." Fed. R. Civ. P. 11, advisory comm. n. 1993 amend. (internal quotation marks omitted). Lawyers cannot avoid sanctions by unreasonably failing to investigate whether their factual contentions have support. *Scott*, 64 F.4th at 474. (That is doubly true if they are aware of facts that could undermine their contentions. *Id.*) Nor can lawyers avoid sanctions by directing a subordinate to file a pleading that will violate Rule 11(b), especially if they work for a "governmental agenc[y] … that frequently impose[s] substantial restrictions on the discretion of individual attorneys." Fed. R. Civ. P. 11, advisory comm. n. 1993 amend. In other words, courts can sanction lawyers for what they should have known, not just what they knew.

Though intent is not required, it still matters. "Whether the improper conduct was willful[ ] or negligent" may bear on whether to impose sanctions and what those sanctions should be. *Id.* Similarly, *sua sponte* sanctions call for more caution. Judges should "use extra care in imposing sanctions" when a lawyer has not had twenty-one days to withdraw a challenged document. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *see* Fed. R. Civ. P. 11(c)(2)–(3) (providing 21-day safe harbor, but not for *sua sponte* sanctions).

But timing was not an issue here. A month and a half passed between the show-cause order and hearing. That was long enough for Appellants to retract or qualify their statements. Yet they chose not to.

13

### C. The District Court did not abuse its discretion in imposing sanctions

1. *As officers of the court, lawyers must be candid and forthright.* Lawyers are officers of the court. They must be completely truthful. Pennsylvania's ethics rules forbid "dishonesty, fraud, deceit or misrepresentation." Pa. R. Pro. Conduct 8.4(c). So do the ethics rules for prosecutors. "The prosecutor should not make a statement of fact or law, or offer evidence, that the prosecutor does not *reasonably* believe to be true, to a court…." Am. Bar Ass'n, *Criminal Justice Standards for the Prosecution Function* § 3-1.4(b) (4th ed. 2017) (emphasis added).

"Rule 11 also imposes an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims. Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—*or after reasonable investigation should have known*—are false or wholly unsupported." *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023) (Kethledge, J.) (citation omitted, emphasis added).

Candor means more than just not lying. It also means not saying things "that are literally true but actually misleading." *In re Taylor*, 655 F.3d 274, 283 (3d Cir. 2011). And it means steering clear of "half-truths, inconsistencies, mischaracterizations, exaggerations, omissions, evasions, and failures to correct known misimpressions created by [the lawyers'] own conduct." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 511 (4th Cir. 2018).

Candor is especially critical when proceedings are non-adversarial. At ex parte hearings, for instance, "the customary

14

checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor." *Me. Audubon Soc'y v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990). The same is true of proceedings that risk being collusive, like class-action settlements or guilty-plea colloquies. Courts must rely on the lawyers because their submissions are one-sided. But that leaves courts "vulnerable to being misled, whether by affirmative misrepresentation or by half-truths that deceive[] through their incompleteness." *Ark. Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55, 65 (1st Cir. 2022). So lawyers must be particularly candid in cases like this one, where both sides agree.

The question, then, is whether Appellants reasonably investigated the facts and had a reasonable basis for their assertions. As Judge Goldberg found, they did not.

2. *The District Court properly sanctioned Appellants for falsely claiming that they had "carefully reviewed the facts and law."* The first challenged statement is the Office's justification for conceding ineffective assistance of counsel: "Here, the District Attorney's Office carefully reviewed the facts and the law…." JA 115. The Office made that claim in its brief, which George and Winkelman put their names on. They and their amici argue vigorously that "carefully" is not falsifiable, but at worst an "unsound piece of lawyer advocacy." Appellants' Br. 36 (internal quotation marks omitted).

Not so. "Carefully" means "[h]eedfully, attentively, circumspectly, cautiously." *Carefully*, *Oxford English Dictionary* (2d ed. 1989). So claiming that one carefully did something can be false, particularly when one is held to a professional

standard of care. When an auditor certifies that he has carefully reviewed a filing, that is not puffery. If his review was sloppy, he can be sued for breach of contract. And when a lawyer signs a debt-collection complaint after glancing at it for four seconds, "he [does] not carefully read and review it in any meaningful sense." *Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 304 (D.N.J. 2014) (sanctioning a lawyer under the Fair Debt Collection Practices Act for implying that he had carefully reviewed the complaint). Equally, prosecutors either review the facts carefully or they do not.

Appellants also say they "carefully reviewed the facts" already in the record, and that was enough. Often, on habeas, reviewing the existing record will suffice. But not here. Our order remanding this case directed the parties to look beyond the record. To gauge whether defense counsel's performance affected the outcome, we instructed: "[W]e must reconstruct the record and assess it anew. In so doing, we cannot merely consider the mitigation evidence that went unmentioned in the first instance; we must also take account of the anti-mitigation evidence that the Commonwealth *would have presented* to rebut the petitioner's mitigation testimony." *Wharton*, 722 F. App'x at 282–83 (emphasis added) (quoting *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011)).

What is more, Appellants should have known where to look. Two paragraphs later, we flagged that Wharton's prison records list some "very serious misconducts." *Id.* at 283 n.21 (internal quotation marks omitted). Though Wharton put forward favorable prison records, the Office itself had previously noted that his selected records were "not comprehensive" and omitted at least one disciplinary infraction. Appellee's Br. 16

n.4, *Commonwealth v. Wharton*, No. 170 CAP (Pa. 2002), 2002 WL 32181316. Appellants admit that they reviewed "briefs from prior stages of the case." Appellants' Br. 39. That review should have alerted them to the undisclosed infractions flagged in the Office's 2002 brief. And a basic criminal-record check would have pulled up the escape attempt. Although we told Appellants to look beyond the record and suggested where to do so, they never did.

The court also gave George and Winkelman a chance to explain how their factual review was careful. But they declined. Because Appellants failed to investigate reasonably to ensure "that the claim was well-grounded in law and fact," the District Court properly imposed sanctions. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (discussing when sanctions are "prescribed," that is, mandated, as opposed to discretionary).

Appellants complain that the District Court sanctioned them for conceding relief. It did not. In our adversarial system, within the bounds of good faith, parties may choose what positions to advocate. *See United States v. Cruz*, No. 23-1192 (3d Cir. Mar. 8, 2024). But in advocating them, they must not distort or misrepresent the facts. *See id.* Courts need those facts to do their job. And as officers of the court, lawyers must be candid. So while the Office may oppose the death penalty, it may not further that position by slanting the facts or the law.

As Judge Goldberg reasonably inferred, the Office crossed that line. It had conceded many death-penalty cases without giving substantive reasons. But the Pennsylvania Supreme Court had limited that practice, holding "that a district

attorney's concession of error is not a substitute for independent judicial review." *Commonwealth v. Brown*, 196 A.3d 130, 146 (Pa. 2018). Just four months after that rebuke, the Office tried "[t]he same tactic" here. JA 65. Spotting the pattern, the District Court inferred that the Office was conceding for an "improper purpose[:] … to circumvent *Brown* in a forum that may be unfamiliar with its strictures." *Id.* (internal quotation marks omitted); *see also* JA 59. As the court held, the Office should have investigated fully and given the court all the facts, or at least admitted its earlier oversights. JA 64–66. Instead, it doubled down. And later on, it denied that its lawyers had known about the escape attempt, which the court found "incredible." JA 66. Spotting that pattern and sanctioning the Office for evading *Brown* was not an abuse of discretion.

3. *The District Court properly sanctioned Appellants for misleadingly claiming that the Office had "communicat[ed] with the victims' family."* The other challenged statement is that the Office was conceding relief only after "communication with the victims' family." JA 95. Though literally true, that statement was misleading. Our opinion remanding this case identified Lisa Hart by name as the sole survivor of Wharton's crimes. *Wharton*, 722 F. App'x at 271. Any reasonable reader would expect, as Judge Goldberg did, that this phrasing meant Lisa had been contacted. Yet she was not. And any reasonable reader would expect, as Judge Goldberg did, that the Office had solicited the views of other family members. Yet the Office had not contacted anyone besides Bradley's brother. Plus, when it reached him, it never told him clearly that it was planning to concede the death penalty. As Winkelman admitted at

the hearing, the Office's failure to reach out to Lisa was a "mistake." JA 50.

The District Court found that the Office made the statement without first inquiring reasonably and confirming that someone had contacted the victims' family, especially Lisa. Because "the reasonably foreseeable effect of [their] representations to the [District] [C]ourt was to mislead the court," their negligent misstatement violated Rule 11. *In re Taylor*, 655 F.3d at 283.

4. *The minor sanctions imposed here were justified*. Finally, the sanctions imposed were mild and fitting. The District Court did not disbar, suspend, jail, or even fine Appellants. Rather, it tailored its sanctions to Rule 11's "central goal"—deterrence. *Cooter*, 496 U.S. at 393. It did that to prevent future misleading statements and to ensure due respect for the victims' family. First, it ordered the Office to accompany future concessions with a "full, balanced explanation of [the] facts." JA 69. That remedy just underscores what the Office is already obligated to do. Second, it ordered District Attorney Larry Krasner to apologize in writing to four members of the victims' family. When the family members learned about the Office's concession, they were "outrage[d]" and "taken [a]back." JA 40. The apology may help soothe their outrage.

George and Winkelman, both dedicated public servants, understandably worry about their professional reputations. The District Court did not find that they misled the court intentionally, nor do we. But they put their names on the brief. They later vouched that they were the ones with knowledge about the concession process and related issues raised by the court. Indeed, as counsel admitted at argument, they directed the

lawyer to sign and file the concession. And they never disavowed it. As supervisors, they are responsible for the notice of concession that they approved. Pa. R. Pro. Conduct 5.1. They made mistakes; they should have investigated more before approving the misstatements. So the District Court properly found George and Winkelman responsible.

\* \* \* \* \*

As officers of the court, lawyers must not mislead courts. So before they state facts, they must investigate reasonably. In this case, the Philadelphia District Attorney's Office and two of its supervisors did not live up to that duty. So the District Court properly ordered District Attorney Larry Krasner to apologize to the murder victims' family and be more forthcoming in the future. Because those mild sanctions were justified and reasonable, we will affirm.